**Rosina SELLERS, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of the Department of Health and Human Services, Defendant.**

**No. 83 Civ. 4716 (DNE).**

United States District Court, S.D. New York.

Aug. 13, 1984.

---

Legal Aid Society (Virginia C. Duncombe, New York City, of counsel), for plaintiff.

Rudolph W. Giuliani, U.S. Atty. (Twila L. Perry, Asst. U.S. Atty., New York City, of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

EDELSTEIN, District Judge:

Plaintiff this action under sections 205(g) and 1631(c)(3) of the Social Security Act, as amended ("Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), appealing a final decision of the Secretary of Health and Human Services ("Secretary"), which denied plaintiff's applications for disability insurance benefits and Supplemental Security Income ("SSI") benefits. Plaintiff has moved, and defendant has cross moved, for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

### FACTS AND CONTENTIONS OF THE PARTIES

Plaintiff, who was born January 21, 1925 (tr. 34), alleges she has been disabled and unable to work since September 12, 1981 due to a "heart condition" (tr. 73–76, 77–86), specifically, atrial fibrillation with congestive heart failure. Plaintiff's Memorandum of Law at 21, 22, 24–25. Plaintiff also alleges disability due to mental impairment (tr. 7–9).

In support of her claim, plaintiff notes she was steadily employed as a machine operator from 1944 through September 11, 1981. On September 11, 1981 she suffered a "sudden ischemic episode" for which she was hospitalized. Tests done at that time revealed severe mitral stenosis and plaintiff was referred for surgery (tr. 115).

Plaintiff cites records of Columbia Presbyterian Hospital covering the period October 13, 1981 through October 27, 1981 indicating she underwent a mitral valve replacement on October 15, 1981 (tr. 115–127). In addition, plaintiff relies on reports of her treating physician, Dr. Joseph Tenenbaum, dated February 17, 1982 (tr. 128–129), April 29, 1982 (tr. 138), June 11, 1982 (tr. 139) and September 22, 1982 (tr. 145–148). Dr. Tenenbaum stated that the post operative course was uncomplicated, but plaintiff continued to suffer chronic atrial fibrillation (tr. 139, 145). In the April 29, 1982 report, Dr. Tenenbaum opined that

plaintiff was not physically capable of undertaking regular work (tr. 138). In the report dated September 22, 1982, he categorized plaintiff as being then in New York Heart Association Functional Class II–III.[1]

Plaintiff also cites the consultative report of Dr. Edmond B. Balinberg dated March 9, 1982 (tr. 130–136) wherein Dr. Balinberg stated plaintiff had an irregular heart rate (tr.130) and that an electrocardiogram revealed "atrial fibrillation with a ventricular response ... and non-specific ST–T changes" (tr. 131). Dr. Balinberg also indicated that due to her heart condition plaintiff should "avoid dust, fumes and changes in temperature and humidity" (tr. 134). But Dr. Balinberg's description of plaintiff's symptoms and his avoidance instructions do not rise to the level of an opinion stating that plaintiff has a severe disability.

Plaintiff contends that the Secretary's decision is not supported by substantial evidence and that Dr. Tenenbaum's opinion that she is disabled is binding on the Secretary since there is no substantial contradictory evidence in the record. Plaintiff asserts that the reliance of the Administrative Law Judge ("ALJ") on the testimony of Dr. Edward Sang, who indicated at the hearing that plaintiff does not suffer a disabling impairment (tr. 58–60), is misplaced because his testimony was "equivocal." *Id.* Plaintiff also asserts that the ALJ erroneously failed to accord plaintiff's allegations of severe disabling pain sufficient credibility.

Plaintiff further contends that her condition meets the Listing of Impairments found in 20 C.F.R. 404.1520(d) Subpart P, Appendix 1.

Plaintiff finally contends the results of psychiatric and psychological consultative examinations performed subsequent to the hearing (tr. 149–152, 153–154) by Dr. Raymond and Dr. Earley support the conclusion she suffers from a disabling mental impairment.

Defendant maintains that the Secretary's determination is supported by substantial evidence.

As to the plaintiff's allegation of disability due to physical impairment, defendant contends that plaintiff's mitral valve replacement in October, 1981 was successful and that her physical condition thereafter steadily improved. Defendant's Memorandum of Law at 15. The government also asserts that Dr. Tenenbaum's conclusion that plaintiff is disabled is not binding because it is contradicted by the opinions of Dr. Balinberg[2] and Dr. Sang and that Dr. Tenebaum's opinion is not supported by clinical findings. It also asserts that the ALJ's finding that plaintiff's allegations of disabling pain were not entitled to great weight should be given great deference. Defendant's Memorandum of Law at 20.

As to plaintiff's allegation of disability due to mental impairment, defendant points out that Dr. Earley's assessment of a mental impairment is contradicted by the findings of Dr. Raymond and that, while Dr. Earley did include clinical findings in her report, "none are of the severity that would support a determination that plaintiff is disabled within the meaning of the Social Security Act." Defendant's Memorandum of Law at 18.

## DISCUSSION

To establish her disability within the meaning of the Act, plaintiff has the burden of establishing that she is unable to engage in substantial gainful activity by reason of

---

1. N.Y.H.A. Functional Class II is applied to "patients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dypsnea or anginal pain." N.Y.H.A. Functional Class III is applied to "patients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary physical activity causes fatigue, palpitation, dypsnea or anginal pain." (N.Y.H.A. Criteria Committee, *Diseases of the Heart and Blood Vessels—Nomenclature and Criteria for Diagnosis,* 6th Ed., Little Brown & Co.).

2. The court's view of Dr. Balinberg's findings is that they neither affirm nor contradict Dr. Tenenbaum's findings.

a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d) and 1382c(a)(3)(A). *See Parker v. Harris*, 626 F.2d 225, 230 (2d Cir.1980).

In *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982), the Second Circuit set forth a five step sequence to evaluate claims of disability:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on the medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

■ After the claimant has proven that she is not engaged in substantial gainful activity, if the fact-finder concludes she nonetheless "lacks a 'severe' impairment, to wit, one that significantly limits [her] physical or mental abilities to do basic work activities, the Secretary will deny benefits without considering the claimant's age, education and work experience." *Chico v. Schweiker*, 710 F.2d 947, 950 (2d Cir.1983). It was at this step in the sequential evaluation that the Secretary denied plaintiff's applications for benefits (tr. 16).

There is no doubt that plaintiff has an impairment. Whether her impairment is "severe" is determined in accordance with the Secretary's regulations at 20 C.F.R. § 404.1521, which provide that "(a) ... an impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities." Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," including standing, sitting, walking, lifting, pushing and pulling.

Based upon the medical evidence of record as well as plaintiff's testimony at the hearing, the Secretary found: "[t]he claimant does not have any impairment or impairments which significantly limit the ability to perform basic work related functions" (tr. 16). The Secretary's decision will be upheld only if it is supported by substantial evidence. 42 U.S.C. § 405(g).[3] Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). The Second Circuit, however, in a lengthy decision on this subject, has called upon district courts to take a hard look at what the Secretary contends constitutes "substantial evidence." *Bluvband v. Heckler*, 730 F.2d 886 (2d Cir.1984). After carefully examining the record under *Bluvband*, this court is compelled to reverse and remand this case to the Secretary for further proceedings.

---

3. In this case, plaintiff claims she is entitled to both disability and S.S.I. benefits under Titles II and XVI. The principal issue under both programs is whether there is substantial evidence to support the Secretary's decision that plaintiff is not disabled as defined in sections 223(d) and 1614(a)(3) of the Act. Since the statutory defini-

tion of disability is identical for both programs, *see* 42 U.S.C. §§ 423(d) and 1382c(a)(3), the vast case law interpreting the meaning of disability under Title II is equally applicable to Title XVI. *See Hankerson v. Harris*, 636 F.2d 893, 895 n. 2 (2d Cir.1980); *Rivera v. Harris*, 623 F.2d 212, 216 n. 4 (2d Cir.1980).

■ Dr. Tenenbaum's clinical view was that plaintiff is disabled. "It is well established in this circuit that '[t]he expert opinions of a treating physician as to the existence of a disability are binding on the fact finder unless contradicted by substantial evidence to the contrary.' *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978)." *Bluvband v. Heckler, supra*, at 893. *See also Donato v. Secretary of Health and Human Services*, 721 F.2d 414, 419 (2d Cir.1983).

■ Furthermore, the *Bluvband* court emphasized, "the treating physician's determination is generally 'entitled to more weight than that of a doctor who has only seen the claimant once ...' " *Bluvband supra*, at 893 (quoting *Rosa v. Weinberger*, 381 F.Supp. 377, 380 (E.D.N.Y.1974)).

■ The Secretary contends that Dr. Tenenbaum's opinion is not supported by sufficient clinical findings and that it is contradicted by the findings of Dr. Balinberg and the testimony of Dr. Sang. First, it appears from the record that Dr. Tenenbaum's reports did include significant clinical findings to support his conclusion (see tr. 128–129, 145–148). Second, there is no requirement that the treating physician's "medical testimony 'be supported by "objective" clinical or laboratory findings.' " *Eiden v. Secretary of Health, Education and Welfare*, 616 F.2d 63, 65 (2d Cir.1980) (quoting *Cutler v. Weinberger*, 516 F.2d 1282, 1287 (2d Cir.1975)).

In addition, Dr. Balinberg's report (tr. 130–136) does not contradict conclusions of Dr. Tenenbaum. Dr. Balinberg reported "atrial fibrillation with a ventricular response between 90–100 per minute" (tr. 131). His assessment of plaintiff's residual functional capacity indicates a significant impairment of her ability to perform basic work related activities, and he states specifically plaintiff should "avoid dust, fumes and changes in temperature and humidity" (tr. 133–134). These findings do not contradict Dr. Tenenbaum's opinion that plaintiff's condition results in "marked limitation of physical activity" (tr. 145). The fact that Dr. Balinberg, a consulting physician, did not specifically state that plaintiff is disabled does not constitute substantial evidence contradictory to Dr. Tenenbaum's opinion.

Dr. Sang's testimony is so frought with difficulties that even were it the testimony of a physician who had examined plaintiff, it would not constitute substantial evidence contrary to Dr. Tenenbaum's conclusion. Dr. Sang testified "there's no indication in the records that there is any rate problem" (tr. 60), but both Dr. Tenenbaum and Dr. Balinberg indicate an irregular rate (tr. 131, 145). Dr. Tenenbaum's September 22, 1982 report indicates plaintiff's heart rate remained irregular through the date of his most recent examination of plaintiff (tr. 145). Dr. Sang did not consider Dr. Tenenbaum's September, 1982 report at all in his testimony at the hearing. In addition, his testimony at the hearing appears to have been equivocal.[4] His opinion, therefore, does not constitute "substantial contradictory evidence" required to offset the opinion of plaintiff's treating physician.

Inasmuch as Dr. Tenenbaum's opinion is not contradicted by substantial evidence, his "expert opinion ... on the subject of disability is binding on the Secretary ...." *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d

---

4. The following dialogue between Dr. Sang and the ALJ indicates the general tenor of Dr. Sang's testimony:

"Q. Doctor, is—fibrulation [sic], is that a serious problem?
"A. No, not in itself. If it is uncontrolled, and the heart beats rapidly, it can cause serious trouble but the digitalis is specific for controlling the rate and there's no indication in the records that there is any rate problem.
"Q. In Doctor Tannenbaum's [sic] report ... [h]e refers to her condition as being functional class 2. Can you describe what that means?
"A. You know, there's ...
"Q. Would you agree with that?
"A. Yeah, I agree with it, but those are very specific definitions and I haven't got them memorized.
"Q. Can you give me a general ...
"A. See, generally, a person with heart disease who has symptoms with some exertional activity ..." (tr. 59–60) (ellipses in original).

Cir.1983). Thus, the record indicates plaintiff suffers a "severe impairment" as that term is defined by the Act. The ALJ erred in failing to go to the next step in the sequence enumerated in *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). On remand, the Secretary must proceed through the *Berry* sequence with respect to plaintiff's heart condition.

 On the issue of plaintiff's claimed mental impairment, the Secretary is affirmed. Plaintiff was found to have a listed mental impairment by Dr. Earley, the consultative psychiatrist (tr. 154). The ALJ, however, found that this report was contradicted by the objective psychological findings of Dr. Raymond (tr. 149–152). The record, tr. 150, does not support the conclusion that plaintiff suffers a severe mental impairment. In addition, plaintiff's mental impairment, if any, was not raised by her in her initial application, but was suggested by Dr. Sang in his testimony at the hearing (tr. 61). Plaintiff's failure to allege a mental impairment until after the hearing casts further doubt on the existence of such a disability.

As to plaintiff's allegations of pain and suffering, while these "may serve as the basis for establishing disability ...," *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979); *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980), the Secretary is not obliged to accept as true, self-serving subjective statements pertaining to a claim. *Reyes Robles v. Finch*, 409 F.2d 84, 87 (1st Cir.1969). Deference should be given the ALJ's judgment since he heard plaintiff's testimony and observed her demeanor. *Deyo v. Weinberger*, 406 F.Supp. 968 (S.D. N.Y.1975). Where the Secretary has exercised her discretion and evaluated plaintiff's credibility, this court may not substitute its views for the trier's. *Parker v. Harris*, 626 F.2d 225 (2d Cir.1980); *McLaughlin v. Secretary of H.E.W.*, 612 F.2d 701 (2d Cir.1980). On remand, the Secretary should give plaintiff's claim that she suffers disabling pain the weight the Secretary finds appropriate.

## CONCLUSION

The decision of the Secretary, that plaintiff does not have a severe impairment, is not based on substantial evidence. It is therefore reversed and this case remanded to the Secretary. This action is dismissed.

SO ORDERED.