Jose DIAZ, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

No. 83 Civ. 9057 (PNL).

United States District Court,
S.D. New York.

March 30, 1987.

Stacy Cromidas, Staff Atty., The Legal Aid Soc., Civil Div., Bronx, N.Y., for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City by Neal S. Mann, Sp. Asst. U.S. Atty., for defendant.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

Plaintiff seeks review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Secretary's determination denying his application for Disability Insurance Benefits and Supplemental Security Income. Both parties moved for judgment on the pleadings and the case was referred to Magistrate Gershon.

The Magistrate found that the Secretary had improperly ignored plaintiff's subjective allegations of pain and recommended reversal and remand to the Secretary for computation of benefits owing to the plaintiff. No objections to the Magistrate's report were filed.

I find the Magistrate's recommendation appropriate and accordingly adopt her report as the court's decision. The case is remanded to the Secretary solely for computation of benefits.

SO ORDERED.

## REPORT AND RECOMMENDATION

Sept. 2, 1986

NINA GERSHON, United States Magistrate:

This is an action under Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (the Act), 42 U.S.C. §§ 405(g) and 1383(c)(3), to review a final determination of the Secretary of Health and Human Services (the Secretary) which denied plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). This report contains my recommendation to Judge Leval on the parties' motions for judgment on the pleadings.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on March 18, 1982, claiming that he was disabled because of injuries to his back and right knee and a sinus condition (74–77[1]). The application was denied initially (80–84) and on reconsideration (88–90). According to the defendant's brief, plaintiff filed an application for SSI benefits on June 22, 1982, which was also denied initially and on reconsideration. The documents relating to that SSI application are not in the record. Upon plaintiff's request (91), a hearing was held before Administrative Law Judge (ALJ) Jeffrey Kohlman. In a decision dated August 24, 1983, ALJ Kohlman found that plaintiff was not disabled (187–192). The Appeals Council affirmed that decision (183–185).

Plaintiff sought review of the final decision of the Secretary by commencing this action on December 14, 1983. Upon consent of the parties, Judge Leval ordered that the case be remanded to the Secretary for a *de novo* hearing because the tape of the hearing before ALJ Kohlman was inaudible and could not be transcribed (20).

Pursuant to Judge Leval's order, a second hearing was held on January 10, 1985, before ALJ Irwin Bernstein (25–42). In a decision dated March 11, 1985, ALJ Bernstein found that plaintiff was disabled as of March 18, 1982, and was thus entitled to DIB (13–19). (Plaintiff was insured for purposes of entitlement through December 1983 (10).) The Appeals Council modified the ALJ's decision, holding that plaintiff did not become disabled until March 1, 1984 (7–12). The Appeals Council found that, prior to that date, plaintiff was able to return to his past work and was therefore not disabled (19). The result of the Appeals Council's decision to limit plaintiff's benefits to those available under SSI. Plaintiff seeks to have this Court reverse the Secretary's determination that plaintiff's disability did not begin until March 1, 1984.

## FACTS

Plaintiff was born on August 26, 1925 in Puerto Rico (27). He is married, but lives alone. He completed the eighth grade and can read and write in Spanish (28). He does not speak or understand English (28). Plaintiff worked from 1970 to 1978 as a forklift operator in a factory manufacturing corrugated cartons (29–30, 105).

During a typical day, plaintiff's job required seven hours of walking—plaintiff did not ride on the forklift (29)—one hour of standing, no sitting, and constant bending and reaching (105). Plaintiff had to lift anything that fell (105).

In April 1978, plaintiff injured his right knee and was forced to stop working (30). After undergoing knee surgery, plaintiff attempted to return to work, but was unable to perform his duties because of swelling of the right knee (30). Three months later, plaintiff again attempted to return to his job, but was unable to do so (31). At the hearing, plaintiff testified that he suffers from "cramps" in the right knee twice a week, for two or three minutes each time (32). Petitioner also testified that he suffers from severe back pain due to a back injury incurred in a 1977 car accident, and from chest pain due to angina (32, 33, 39).[2]

---

1. Numbers in parentheses refer to pages of the record of agency proceedings.

2. Plaintiff's heart condition apparently began after March 1, 1984. It was not referred to in his March 1982 application for DIB (74–77).

Plaintiff testified that he has suffered from back pain since 1977, and stated that "lately, it's been bothering me more" (37).

Plaintiff testified that he spends his time reading and watching television (35). He prepares his own breakfast, but his daughter brings him his other meals (36). He sometimes shops, because the supermarket is just across the street (37). In a reconsideration disability report dated June 30, 1982, plaintiff stated "I cannot do any heavy cleaning, cooking or shopping. My friends and daughter help me do those things. There are times when I need help to get in and out of the bath tub" (111). An SSA interviewer observed that plaintiff "seemed to walk somewhat rigidly" (113). Another SSA interviewer, in a report dated March 18, 1982, observed that plaintiff walked very slowly (102).

Plaintiff testified that his daughter takes him to church and finds him a seat in the rear so he can get up and sit down during the one-hour mass without bothering the other parishioners (36). Plaintiff testified that he cannot walk more than two blocks without having to stop, can stand for only 15 to 20 minutes, and can lift two or three pounds. He sleeps very poorly; after approximately two hours, he wakes up with cramps in his knee and leg or back pain (37). In a reconsideration disability report dated March 3, 1981—filed in connection with an earlier application for DIB—plaintiff stated that he was in constant pain and that "I'm very depress [sic] and whenever I sleep for more then [sic] three hours I have to get up because of the pain" (58).

The record contains the following medical reports: In a report to the New York State Department of Social Services (DSS) dated March 20, 1981, Dr. Herbert Nelson stated that he had treated plaintiff since April 29, 1977 for "back disability lumbo sacral back which neccitated [sic] I.M. Depo Medrol to lumbo sacral ligament for relief of pain only." At plaintiff's request, Dr. Nelson examined plaintiff's right knee, which was being treated at the South Bergan Hospital in Hasbrouck, New Jersey

(119–120). Dr. Nelson's examination revealed swelling and tenderness along the medial aspect of the knee, with partially restricted motion (119). There was no evidence of atrophy, muscle spasm or sensory impairment, and reflexes were normal. Dr. Nelson concluded that plaintiff's right gait was partially impaired because of pain (120).

In reports dated March 19, 1982 and April 9, 1982, Dr. Nelson stated that plaintiff suffered from partial restriction of back motion and was being treated with I.M. Depo Medrol and with Xylocaine for relief of his back pain (131–132). Dr. Nelson reported that plaintiff's back reflexes were normal, and that he suffered no atrophy of the back muscles, or radiation of pain (133). On Dr. Nelson's last examination of plaintiff on March 11, 1982, plaintiff's lumbosacral spine exhibited "minimal tenderness" but there was no spasm of muscles in the lumbar back (131). Dr. Nelson concluded that plaintiff suffered from a "partial back disability" (133). Dr. Nelson also diagnosed plaintiff as having "Pelligrini Stia Disease Right Knee" and stated that there was "minimal disability in knee" (133).

Dr. Barry Jupiter examined plaintiff on behalf of the Secretary on April 24, 1982. Dr. Jupiter stated that plaintiff complained of "persistent back pain and knee pain, more on the right than the left" (134). Based on x-rays and a clinical evaluation, Dr. Jupiter diagnosed plaintiff as having "low back syndrome, possible discogenic disease" and osteoarthritis (135). He noted a one-half inch atrophy of the right calf compared to the left and a one-quarter inch atrophy of the right mid-thigh compared to the left (135). He also noted that x-rays revealed significant narrowing of L5–S1 of approximately 70% in the lumbosacral spine. Regarding plaintiff's residual functional capacity, Dr. Jupiter stated: "In an 8 hour day he should be able to sit 6 hours intermittently, stand and walk 2 hours each intermittently. He should not do any significant amount of heavy lifting or carry-

Plaintiff's counsel, in his brief to this Court, does not refer to the heart condition in support of his argument that plaintiff was disabled prior to March 1, 1984.

ing. He can occasionally squat, he should avoid bending, crawling and climbing" (136).

Dr. Alan Berly conducted an x-ray examination of plaintiff's right knee and lumbosacral spine on behalf of the Secretary on April 24, 1982. With respect to the knee, Dr. Berly found no evidence of fracture or any degenerative changes (139). He noted the presence of a small bony protuberance extending from the medial femoral condyle (139). With respect to the lumbosacral spine, Dr. Berly noted a narrowing of the L5–S1 intervertebral disc space associated with hypertrophic spurring of a minor degree, and stated that his findings were consistent with degenerative disc disease (139).

On June 8, 1982, Dr. S. Kreinin, a non-examining review physician, assessed plaintiff as being physically capable of sitting eight hours, walking two hours and standing six hours in an eight hour day (140). Dr. Kreinin estimated that plaintiff could lift 25 pounds frequently, but should avoid bending, crawling and climbing (140).

In a report dated November 30, 1982, Dr. H. Hertzberg stated that he had treated plaintiff's low back syndrome from April 1982 to September 1982. Dr. Hertzberg reported that plaintiff had "mild limitation of motion of the back," with no neurological abnormalities or significant atrophy. He stated that plaintiff's "gait is not adversely affected" and that "there are no other significant restrictions of any extremities" (141).

Dr. M.K. Sharma submitted a report dated March 29, 1983, stating that he had treated plaintiff on March 15 and March 29, 1983 for low back pain due to osteoarthritis in the lumbar spine (154–158). Dr. Sharma assessed plaintiff as being physically capable of sitting, walking and standing for one hour at a time during an eight-hour workday, of lifting and carrying up to ten pounds occasionally, and occasionally bending, squatting, crawling, climbing and reaching. Dr. Sharma submitted a second report dated April 12, 1983, stating that plaintiff suffered from back pain and restriction of motion due to osteoarthritis of the lumbosacral spine, and was "disabled at present" (165).

Finally, the record contains the report of Dr. Andrea Lyons, who began treating plaintiff in September 1984 (171–176). It was based on this report, dated January 3, 1985, that the Appeals Council found that plaintiff has been disabled as of March 1, 1984 (10).[3] She diagnosed plaintiff as having lumbar sacral spinal radiculopathy, and second degree trauma, and her prognosis was "chronic severe back pain" (172). She estimated, during an eight-hour workday, plaintiff could sit and stand for up to 20 minutes continuously and for a total of three hours each, and could walk for up to 15 minutes continuously and for a total of three hours (174). She stated that plaintiff had to change position frequently due to pain, and could never lift or carry anything (174).

## DISCUSSION

A claimant seeking DIB or SSI benefits is considered disabled under the Act if he is unable to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The claimant bears the burden of proving he is unable to perform his past work. *Bluvband v. Heckler,* 730 F.2d 886, 891 (2d Cir.1984). If the claimant establishes that his impairment prevents him from performing his past work, the burden shifts to the Secretary to prove that there is other work the claimant could perform.

---

3. The Appeals Council found that Dr. Lyons' report established that plaintiff was disabled "at least since September 1984 ..." (8). The Appeals Council reasoned that, in the absence of trauma, the degree of severity noted by Dr. Lyons in September 1984, did not occur spontaneously and was the result of progressive deterioration. The Appeals Council, stating that it was giving the evidence "a liberal interpretation," held that plaintiff's disability began six months prior to the symptoms noted by Dr. Lyons in September 1984 (10).

*Bluvband v. Heckler, supra,* 730 F.2d at 891.

■ In assessing a claim of disability, the Secretary must consider objective and subjective factors, including the following: (1) the objective medical facts; (2) diagnoses or medical opinions based on these facts; (3) subjective evidence of pain and disability testified to by the claimant or others, and (4) the claimant's educational background, age and work experience. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980). All complaints of a claimant must be considered in combination in determining his capacity to work. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(G); *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 42 (2d Cir.1972).

Absent legal error, a finding by the Secretary that a claimant is not disabled is conclusive if supported by substantial evidence and cannot be set aside. 42 U.S.C. § 405(g); *Bluvband v. Heckler, supra,* 730 F.2d at 891.

■ The Appeals Council found that the evidence was not sufficient to establish that plaintiff was under a disability between March 1982 and March 1984. Plaintiff's principal argument is that the Appeals Council failed to give due consideration to plaintiff's subjective allegations of pain. Once it is established that a claimant suffers from a medically determinable impairment which could reasonably be expected to produce the type of pain of which a claimant complains, the Secretary may not ignore subjective evidence as to the severity of the pain caused by that impairment. *Marcus v. Califano,* 615 F.2d 23, 27–28 (2d Cir.1979). Of course, the Secretary is not obliged to accept without question a claimant's assertion that he suffers from disabling pain. *Losco v. Heckler,* 604 F.Supp. 1014, 1018 (S.D.N.Y.1985). Rather, the Secretary must evaluate the claimant's credibility based on objective medical evidence, the claimant's demeanor, testimony regarding his symptoms and daily activities and other evidence. *Marcus v. Califano, supra,* 615 F.2d at 27; *Maisch v. Heckler,* 606 F.Supp. 982, 994–995 (S.D.N.Y.1985).

■ In this case, plaintiff persistently complained of back pain and pain in the right knee during the relevant period, to his treating physicians, in his applications for disability benefits, and in his testimony before ALJ Bernstein, who found his testimony persuasive. It is undisputed that plaintiff had a medically determinable impairment in the lumbosacral spine and had suffered an injury to his knee which required surgery. Under these circumstances, the Appeals Council was not entitled to ignore subjective allegations of pain.

The Appeals Council, however, did ignore plaintiff's subjective allegations. This is clearly revealed in its discussion of Dr. Jupiter's report. Dr. Jupiter, who examined plaintiff on behalf of the Secretary, estimated that plaintiff could stand and walk for only two hours each intermittently, and should avoid bending (136). Based on this evaluation, plaintiff would be unable to return to his previous job as a forklift operator, which required seven hours of walking, one hour of standing and constant bending (105).

The Appeals Council rejected Dr. Jupiter's residual functional capacity evaluation, in part because "[t]he restrictions appear to be based on subjective allegations because they are not supported by the results of Dr. Jupiter's examination" (9). The Appeals Council thus appeared to view plaintiff's subjective allegations of pain as irrelevant to the determination of his functional capacity. This was improper, since, as discussed above, plaintiff did suffer from medically determinable impairments which could lead to the type of pain alleged. Indeed, Dr. Jupiter found objective indications of low back syndrome and osteoarthritis, and atrophy of the right leg compared to the left (135).

While this Court is reviewing the decision of the Appeals Council, and not the decision of ALJ Bernstein, it is significant that the ALJ found that plaintiff's allegations of pain were persuasive (18). As the Secretary states in his brief: "Great deference should be given to the judgment of the ALJ since he heard the witness' testi-

mony and observed their demeanor." Def.'s Memo of Law, p. 14.

■ Apparently recognizing that the Appeals Council's treatment of plaintiff's subjective allegations of pain is reversible error under the standard set forth in *Marcus v. Califano, supra,* the Secretary argues in his brief that the *Marcus* standard has been overruled by Section 3 of the Social Security Disability Benefits Reform Act of 1984, codified at 42 U.S.C. §§ 423(d)(5)(A) and 1382c(a)(3)(H). That section provides in pertinent part:

> An individual's statement as to pain or other symptoms shall not <u>alone</u> be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which when considered with all evidence required to be produced under this paragraph <u>(including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings),</u> would lead to a conclusion that the individual is under a disability.[4] (Emphases added).

This statute is clearly consistent with the standard set forth in *Marcus v. Califano,* which requires evidence of a medically determinable impairment before the Secretary is required to consider subjective allegations of pain. *See e.g. Gallagher v. Schweiker,* 697 F.2d 82, 84 (2d Cir.1983).

The Secretary's argument has been specifically rejected by the Courts of Appeals of the Third and Eighth Circuits, which have articulated a "pain rule" similar to that set forth in *Marcus v. Califano. Green v. Schweiker,* 749 F.2d 1066 (3rd Cir.1984); *Polaski v. Heckler,* 739 F.2d 1320, 1321–1322 (8th Cir.1984). While the Court of Appeals for the Second Circuit has not expressly addressed the issue, the Court did reiterate the *Marcus v. Califano* standard in a case decided after the enactment of Section 3: *Mimms v. Heckler,* 750 F.2d 180, 185–186 (2d Cir.1984). *Accord: Brown v. Bowen,* 794 F.2d 703, 706 n. 4 (D.C.Cir.1986) ("Although the statute requires ... objective evidence of an underlying impairment which could cause such pain, objective medical evidence of pain itself, such as muscle atrophy or weight loss, is not necessary.)

■ Because the Appeals Council improperly ignored plaintiff's subjective allegations of pain, the Secretary's decision that plaintiff was capable of returning to his previous job prior to March 1984 should be reversed. Moreover, the record contains persuasive proof that plaintiff could not return to his previous job during the relevant time period. Both Dr. Kreinin, a nonexamining review physician, and Dr. Jupiter, who examined plaintiff once on behalf of the Secretary estimated that plaintiff could walk only two hours in an eight-hour day, and should avoid bending (136, 140). Dr. Sharma estimated that plaintiff could walk only one hour at one time (although he did not indicate the total number of hours plaintiff could walk in an eight-hour day) and that plaintiff could bend only occasionally (156–157).[5] Plaintiff's job required him to walk for seven hours in an eight-hour workday, and required constant bending (105).

---

**4.** In quoting this provision, the Secretary in his brief omitted the underlined parenthetical phrase.

**5.** Plaintiff argues that Dr. Sharma's evaluation of plaintiff's functional capacity, and his opinion that plaintiff was disabled, is entitled to special weight since Dr. Sharma was plaintiff's treating physician. A treating physician's opinion is accorded extra weight "because the continuity of treatment he provides and the doc-

tor/patient relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient." *Mongeur v. Heckler,* 722 F.2d 1033, 1039 n. 2 (2d Cir.1983). Dr. Sharma had only examined plaintiff twice when he submitted his first report (154) and a third time when he submitted his second report (165). Therefore, the treating physician rule is of very limited application here.

The Appeals Council rejected Dr. Jupiter's evaluation of plaintiff's functional capacity because the evaluation was "not supported by the results of Dr. Jupiter's examination" (9).

 The members of the Appeals Council, who are not physicians, are not qualified to evaluate the correlation between clinical findings and a claimant's functional capacity. *Wilson v. Heckler,* 743 F.2d 218, 221 (4th Cir.1984) ("In finding that Dr. Marshall's clinical findings did not support his conclusion as to plaintiff's functional limitations, the ALJ erroneously exercised an expertise he did not possess in the field of orthopedic medicine"). *See McBrayer v. Secretary of Health and Human Services,* 712 F.2d 795, 799 (2d Cir.1983).

The Appeals Council also stated that Dr. Jupiter's evaluation was "inconsistent with the reports of treating physicians, Drs. Nelson and Hertzberg which did not show the presence of a condition to limit standing and walking" (9). However, the record does not contain an evaluation of plaintiff's residual functional capacity from these doctors; therefore, the Appeals Council could not know what their estimation of plaintiff's ability to walk and bend would be.

The three residual functional capacity evaluations contained in the record for the relevant time period two of which were done on behalf of the Secretary, indicate plaintiff could not return to his previous work. There is no substantial evidence to the contrary. Because the record contains persuasive proof that plaintiff was unable to return to his previous job, a remand for the purpose of further proceedings on the issue of whether plaintiff could return to that job is unnecessary. *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980).

 The remaining question is whether the Secretary should be given an opportunity to seek a remand for further evidentiary proceedings to determine whether plaintiff could perform other work during the relevant period, and was thus not disabled despite his inability to return to his past work. *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 643–644 (2d Cir.1983). I recommend that the Secretary

not be given this opportunity, and that this case be remanded solely for the computation of benefits. It is highly unlikely that the Secretary would be able to establish plaintiff's ability to do other work as of March 1982. The record establishes that plaintiff was incapable of doing the "good deal of walking" necessary for light work, 20 C.F.R. § 404.1567(b) (1986). The Appeals Council noted correctly that if plaintiff could perform only sedentary work he would be deemed disabled in light of his age, education, inability to speak or understand English, and previous work experience (11). Moreover, this case has already been remanded once, because of the Secretary's inability to provide a transcript of the first ALJ hearing. Permitting the Secretary to seek a remand for further proceedings would unduly prejudice plaintiff who, on the record before this Court, has established his entitlement to DIB as of March 1982.

## CONCLUSION

For the reasons stated above, I recommend that the plaintiff's motion for judgment on the pleadings be granted, that defendant's motion for judgment on the pleadings be denied, and that this action be remanded for the computation of benefits.

Copies of this report and recommendation are today being served upon the parties, who are hereby advised that any objections to this report should be served and filed, with a copy to me, in conformity with Rule 72(b) of the Federal Rules of Civil Procedure.