Tanya **HARRISON**, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
Defendant.

**No. 93 Civ. 7890 (AGS).**

United States District Court,
S.D. New York.

Oct. 19, 1995.

Guilene Cherenfant, Bronx Legal Services, Bronx, New York, for plaintiff.

Susan D. Baird, Assistant United States Attorney, Southern District of New York, U.S. Department of Justice, New York City, for defendant.

### OPINION & ORDER

SCHWARTZ, District Judge:

Plaintiff, Tanya Harrison, brings this action under sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), challenging a determination of the Secretary of Health and Human Services (the "Secretary"), denying plaintiff's applications for Social Security Disability benefits and Supplemental Security Income benefits based on disability. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the parties' cross-motions for judgment on the pleadings are denied, the determination denying benefits is reversed, and the case is remanded to the Secretary for further proceedings consistent with this opinion.

### PROCEDURAL HISTORY

Plaintiff alleges that she has been disabled since March 25, 1991 due to lumbar radiculopathy, a condition which causes back pain and restricts movement. On April 11, 1991, Harrison filed concurrent applications for Title II, Social Security Disability benefits and for Title XVI, Supplemental Security Income

benefits. Tr. 61–73.[1] The applications were denied on November 12, 1991. Tr. 57–60, 74–77. Plaintiff's request for a reconsideration of that decision was also denied. Tr. 81–89. Harrison then requested a hearing, which was held on November 17, 1992 before Administrative Law Judge ("ALJ") Louis V. Zamora (the "Hearing"). Plaintiff appeared at the Hearing *pro se*. Tr. 23. On April 27, 1993, the ALJ issued his decision. Relying on the opinion of a consultative examiner, Dr. Travis, ALJ Zamora found that plaintiff has "a residual functional capacity to perform sedentary work" and denied plaintiff disability benefits. Tr. 23–28. This determination by the ALJ became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on September 17, 1993. Tr. 3–4.

*BACKGROUND*

Plaintiff was born on March 21, 1949 and has an eleventh grade education. Tr. 53, 37. She worked for the United States Postal Service from February 1986 through March 1991. Harrison initially performed the duties of a letter carrier. Tr. 38. During her last two years at the Postal Service, plaintiff performed light duty work which involved putting mail into boxes and typing letters. Tr. 39. Before plaintiff joined the Postal Service, she worked for two years as a therapist aide in Manhattan State Hospital. Tr. 39.

Harrison testified at the Hearing that while she was working as a therapist aide, she was attacked by a patient and injured her back. Tr. 39. She left her job at the hospital to pursue a career with the Postal Service. *Id.* Plaintiff stated that she stopped working for the Postal Service on March 25, 1991 because she was suffering from constant pain in her lower back, which radiated to her legs, and her legs would "give out." Tr. 40. She takes medication, which helps temporarily, but the pain always returns. Tr. 41. Plaintiff testified that she started having the pain approximately three years before she left the Postal Service. Tr. 41, 100. She also experiences decreased strength and instability in her legs, cannot walk or sit for prolonged periods and cannot bend. Tr. 40–46.

Plaintiff was first treated for back pain in February 1989 at the Soundview Health Center. Tr. 125–27. A private physician at the Center, Dr. Donald Woodburn, referred her for hospitalization and treatment at the Union Hospital of the Bronx, where she was hospitalized for three days in November of 1989. Tr. 128–39. X-rays taken during her stay revealed "mild disc space narrowing at C5–6 which [was suggestive] of early discogenic disease." Tr. 137. Following a physical examination on November 9, 1989, Dr. Woodburn reported marked obesity, scoliosis in the thoracic spine with an inclination towards the left side, marked lumbar lordosis, tenderness along the right iliac crest (or hip bone) and limitations in bending and flexing. Tr. 139. In the Disability Report plaintiff filled out on April 11, 1991, she stated that she saw Dr. Woodburn every two weeks starting in March of 1989 until March 27, 1991. Tr. 101. On March 27, 1991, Dr. Woodburn recommended that plaintiff go on permanent disability, due to the pain in her lower back that continued "despite maximum therapeutic intervention." Tr. 140.

Following Dr. Woodburn's relocation to Florida, Harrison was attended by Dr. Jennifer Wright. Dr. Wright treated plaintiff in December 1991, February 1992, April 1992 and May 1992. Tr. 116–22. On Dr. Wright's recommendation, plaintiff underwent an electromyogram ("EMG") and a magnetic resonance imaging ("MRI") test. Tr. 118, 120. The results of the EMG showed findings "most consistent with bilateral lumbar 5 radiculopathy." Tr. 170–72. The MRI revealed "degenerative changes at the L3–L4 interspace" of the lumbar spine. Tr. 118. From June 1992 to October 1992, plaintiff was attended by Dr. Maya Gluck–Shats. (Tr. 115, 176–77).

On October 12, 1991, Harrison was examined by social security consultative examiner, Dr. Daoud Karam. (Tr. 142–45). X-rays performed on October 14, 1991 in conjunction

---

1. "Tr." refers to the transcript of the administrative record filed by the Secretary as part of her answer.

with this examination revealed some "osteo-phytes involv[ing] the L4 and L5 vertebral bodies." (Tr. 145). His final impression of plaintiff's condition was "[s]evere low back derangement [and] [o]steoarthritis." (Tr. 144).

Harrison received emergency medical care on November 1, 1992 at St. Barnabas for severe back, knee and foot pain. Tr. 184–87. She was given medication and discharged to the outpatient and physical rehabilitation clinics for follow-up treatment. Tr. 165–66. Plaintiff underwent physical rehabilitation therapy from December 1992 until May 1993 when she was discharged due to lack of response to the treatment. Tr. 14.

On January 23, 1993, plaintiff was examined by Dr. L. Travis, a social security consultative examiner. Although he noted that Harrison's MRI results from February 14, 1992 showed "degenerative changes [to] L4–5 but no disc herniation" and her EMG showed "bilateral L–5 radiculopathy," Dr. Travis's impression was that "there is no clinical evidence of a radiculopathy." Tr. 194. X-rays of the lumbar spine taken in conjunction with that examination showed "[d]egenerative osteophyte formation" and "[m]ild disc space narrowing ... at the L3–L4 level suggestive of possible degenerative disc disease at this level." Tr. 195. Dr. Travis' recommendation was that plaintiff lose weight and follow the advice of her local physician. Tr. 194.

On February 11, 1993, plaintiff was examined by Dr. Joseph Waltz, the director of the department of neurological surgery at St. Barnabas. His diagnosis was for "[l]umbar canal stenosis secondary to post traumatic changes involving the D.J.D. articular facets and extensive productive changes posteriorly with a superimposition of a prolapse herniated midline disc at L4–L5 creating a significant spinal stenosis." Tr. 13.

## DISCUSSION

### A. Scope of Review

Section 205(g) of the Act provides that "[a]ny individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... in [a]

district court of the United States." 42 U.S.C. § 405(g). "It is not the function of a reviewing court to determine de novo whether the claimant is disabled." *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980). The standard of review, as established by Congress, is whether the Secretary's decision is supported by substantial evidence. *Id.* However, legal error and failure to provide a full and fair hearing present additional bases of judicial review. *See Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980) ("a reviewing court must be satisfied that the claimant has had a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act"); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984) ("where an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal"). In addition, where the claimant has appeared before the ALJ without counsel, "the reviewing court has a duty to make a searching investigation of the record to ensure that the claimant's rights have been adequately protected." *Hankerson v. Harris*, 636 F.2d at 895 (citations and internal quotations omitted).

### B. Determining Disability

A claimant is entitled to disability benefits under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Secretary will find a claimant disabled only if the claimant's

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job

vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(A).

The Secretary is to evaluate disability cases according to a five-step sequence. 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit summarized this procedure as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982) (per curiam); *see also Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–92, 96 L.Ed.2d 119 (1987).

■ The burden of proving disability is on the claimant with regard to the first four steps, but shifts to the Secretary for the final step. *Berry v. Schweiker,* 675 F.2d at 467. Specifically, with regard to this final step, the Secretary must assess the claimant's job qualifications and show that such jobs as the claimant is qualified for are found in significant numbers in the national economy. *Heckler v. Campbell,* 461 U.S. 458, 461–62, 103 S.Ct. 1952, 1954–55, 76 L.Ed.2d 66 (1983).

■ In assessing a claim of disability, the ALJ should consider both objective and subjective factors, including: (1) objective medical facts; (2) diagnosis or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or other witnesses; and (4) the claimant's educational background, age and work experience. *Parker v. Harris,* 626 F.2d at 231.

## C. Treating Sources

A "treating source" is defined as a claimant's "own physician or psychologist who has provided [him or her] with medical treatment or evaluation and who has or has had an ongoing treatment relationship with [the claimant]." 20 C.F.R. 404.1502. The Secretary "may consider a physician or psychologist who has treated [a claimant] only a few times or only after long intervals (e.g. twice a year) to be [a claimant's] treating source if the nature and frequency of the treatment is typical for [the claimant's] condition(s)." *Id.*

The Secretary's regulations provide that she will "give more weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. 404.1527(d)(2), 416.927(d)(2). The Secretary will give the treating source's opinion regarding the nature and severity of a claimant's impairment "controlling weight" if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Id.*

If the Secretary does not give the treating source's opinion controlling weight, then she must apply the following five factors in determining the proper weight to give the opinion: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) whether the treating source has presented relevant evidence, i.e. "medical signs and lab-

oratory findings," to support the opinion; (4) the opinion's consistency with the record as a whole; and (5) whether the opinion relates to the particular physician's specialty area. *Id.*

■ The ALJ in the instant case found that none of the doctors who treated plaintiff were her treating sources. Specifically, the ALJ states in his decision

> The record contains a letter from Dr. Woodburn dated March 27, 1991 in which he states "it is my recommendation that she goes on permanent disability." The record contains no report or other communication from Dr. Woodburn indicating the dates of his treatments or his clinical findings. Furthermore, the claimant testified that she did not see Dr. Woodburn since 1990. His letter, therefore, was written several months after he had last seen her, during which time she was working, because the claimant's [sic] alleged an onset date of March 25, 1991. There is no medical evidence that, in fact, Dr. Woodburn was a treating physician [sic] in 1990, but he was certainly not a treating physician [sic] as of March 27, 1991. For all of these reasons his opinion at that time cannot determine the disposition of this matter. In a letter dated April 21, 1992, Dr. Wright, a physician who saw the claimant at Soundview Health Center, states that "it is difficult to say at this time when she will be able to return to work." There is no evidence that Dr. Wright was, in fact, a treating physician [sic].

Tr. 26. Since the ALJ determined that Dr.s Woodburn and Wright were not plaintiff's treating sources, he gave their opinions little, if any, weight. He also side-stepped the requirement that he apply the five factors noted above in determining the proper weight to give their opinions. In reaching his decision, the ALJ relied primarily on the opinion of Dr. Travis, a consultative physician who examined plaintiff once. ALJ Zamora states in his decision, "Dr. Travis examined the claimant after her period of physical therapy was completed and ... I believe that [his] opinion [] constitutes substantial evidence in this matter and is consistent with the record as a whole." Tr. 27.

In fact, there is ample evidence that Dr. Wright was a treating source. The record shows that plaintiff saw Dr. Wright at least four times from December 1991 to May 1992. Tr. 116–22. On April 21, 1992, Dr. Wright noted that she examined plaintiff for the first time on December 13, 1991 and that plaintiff had since followed up for various referrals, including a neurologist examination, an MRI, EMG and physical therapy. Tr. 118. The EMG performed on April 15, 1992 showed "bilateral L5 radiculopathy." *Id.* Dr. Wright further remarked that "[i]t is difficult to say at this time when she will be able to return to work." *Id.*

Plaintiff saw Dr. Wright on a regular basis over the course of five months. In that time, Dr. Wright diagnosed plaintiff and referred her for various tests and treatment. The quality of this relationship appears sufficient to be considered that of a treating source. *See Bello v. Bowen,* 1989 Westlaw 45531 (S.D.N.Y.1989) (Kram, D.J.), 1989 Unempl.Ins.Rep. (CCH) ¶ 14663A (treating source relationship found where patient saw physician over a span of three months). ALJ Zamora erred in failing to consider this evidence before determining that Dr. Wright was not plaintiff's treating source.

■ The record is less clear regarding the question of whether Dr. Woodburn was a treating source. On plaintiff's Disability Report, which she filled out on April 11, 1991, she stated that she saw Dr. Woodburn every two weeks from March of 1989 through March 27, 1991. Tr. 101. On November 11, 1989, Dr. Woodburn had plaintiff admitted to the Union Hospital of the Bronx, where she was a patient for three days. Tr. 128. On March 27, 1991, Dr. Woodburn wrote that plaintiff "continues to have pain in the lower back despite maximum therapeutic intervention" and he recommended that she go on permanent disability. This letter was written on stationery showing a Bronx, New York address. Tr. 140. At the Hearing, plaintiff testified as follows:

Q [ ] Now Dr. Woodburn, when did you start seeing him?

A In '89, I think March of '89, I believe.

Q And you stopped seeing him?

A   Due to the fact that he had moved to Florida.

Q   When was that?

A   He didn't move, he left in '90, I believe.

Q   Was he retired or—

A   I don't know what the problem was. I know I went to go to him and he was gone, so I don't know.

Tr. 44. Plaintiff was not sure that Dr. Woodburn left New York in 1990, yet the ALJ assumed that this was correct and that therefore Dr. Woodburn's letter dated March 27, 1991 was written long after plaintiff had last seen him. The ALJ did not ask any other questions at the Hearing about Dr. Woodburn or plaintiff's relationship with this physician, and there is no further evidence in the record of plaintiff's visits to Dr. Woodburn.

In *Hankerson v. Harris,* the Second Circuit stated that when a claimant appears *pro se* at a disability hearing, the ALJ has a "duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" in order to ensure that they are "sufficiently developed and considered." 636 F.2d at 895 (citations and internal quotations omitted). Whether or not Dr. Woodburn was plaintiff's treating source is clearly relevant to plaintiff's case. As to this point, the record is ambiguous. Plaintiff stated that she saw Dr. Woodburn every two weeks from March 1989 until March 1991. Tr. 101. Assuming that this statement is true (or even partially true), Dr. Woodburn would certainly be considered plaintiff's treating source. However, there is no documentary evidence of these bi-monthly visits. Rather than probe further to resolve this ambiguity, the ALJ assumed that Dr. Woodburn was not a treating source. Thus, ALJ Zamora erred in failing to perform his duty to develop the relevant facts and provide this *pro se* claimant with a full and fair hearing. *See id.; see also Cruz v. Sullivan,* 912 F.2d 8, 12 (2d Cir.1990) (when ALJ rejects findings of treating physician because they were conclusory or not supported by specific clinical findings, he should direct a *pro se* claimant to obtain a more detailed statement from the treating physician).

### D.   Credibility of Plaintiff's Testimony

■   At the Hearing, Harrison testified that she suffers from constant pain in her lower back that radiates to her legs. Tr. 40. She stated that she cannot walk any farther than a block or two, stand for more than fifteen minutes, sit for more than thirty minutes, kneel or bend due to the pain. Tr. 45–46. The ALJ dismissed plaintiff's allegations of pain and functional limitations stating, "[a]fter reviewing all of the medical evidence and considering the testimony, I find that the claimant's subjective allegations of pain and functional limitation are somewhat disproportionate to the objective clinical findings in respect to severity." Tr. 26.

The Secretary's regulations provide that she will evaluate symptoms including pain as follows:

> In determining whether [a claimant is] disabled, we consider all [the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.... However, statements about [a claimant's] pain or other symptoms will not alone establish that [the claimant] is disabled; there must be medical signs and laboratory findings which show that [the claimant] has a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence ... would lead to a conclusion that [the claimant] is disabled.... *However, we will not reject [a claimant's] statements about the intensity and persistence of [his or her] pain or other symptoms or about the effect [the claimant's] symptoms have on [his or her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements.*

20 C.F.R. § 404.1529(a), (c)(2) (emphasis added).

■   It is well established in the Second Circuit and elsewhere that "subjective pain may serve as the basis for establishing disability, even if such *pain* is unaccompanied by positive clinical findings or other 'objective' medical evidence." *Marcus v.*

*Califano,* 615 F.2d 23, 27 (2d Cir.1979) (citations omitted). Once it is established that a claimant suffers from a medically determinable impairment which could reasonably be expected to produce the type of pain of which she complains, the Secretary may not ignore subjective evidence, such as a claimant's testimony, as to the severity of the pain caused by that impairment. *Diaz v. Bowen,* 664 F.Supp. 725, 730 (S.D.N.Y.1987) (Leval, D.J.) The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment regarding the true extent of the pain alleged; however, it is legal error for an ALJ to reject a claimant's allegations of disabling pain on the ground that objective, clinical findings did not establish a cause for such intense pain. *Id.* Furthermore, if the ALJ finds that the claimant's (or any witness's) testimony lacks credibility, that finding must "be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams v. Bowen,* 859 F.2d 255, 260–61 (2d Cir.1988).

Plaintiff has established that she has a medically determinable impairment which could reasonably be expected to produce severe pain. The ALJ recognized that "the claimant has the following severe impairments based upon the medical evidence: (1) low back pain; (2) osteoarthritis; (3) lumbar radiculopathy; (4) scoliosis of the thoracic spine; and (5) lumbar lordosis." Tr. 27. Thus, if the ALJ rejected plaintiff's allegations of disabling pain due to an absence of objective clinical findings establishing a cause for the pain, he committed reversible error. If, on the other hand, the ALJ found that plaintiff's testimony lacked credibility, he did not err in rejecting it, but it was error not to state with specificity the reasons for the rejection.

*CONCLUSIONS*

The Second Circuit has instructed that "when there are gaps in the administrative record or the ALJ has applied an improper legal standard," the matter should be remanded to the Secretary for further development of the evidence. *Hankerson v. Harris,* 636 F.2d at 897. Since counsel now represents plaintiff, it is likely that the unexplored information discussed above will be pursued.

Accordingly, the Secretary's decision is reversed and remanded for further proceedings consistent with this opinion. Both motions for judgment on the pleadings are denied. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.