Paulina **BLUVBAND**,
Plaintiff-Appellant,

v.

Margaret **HECKLER**, Secretary of
Health and Human Services,
Defendant-Appellee.

No. 433, Docket 83–6238.

United States Court of Appeals,
Second Circuit.

Argued Dec. 15, 1983.

Decided March 23, 1984.

Sylvia Wertheimer, New York City (Orans, Elsen & Lupert, New York City, of counsel), for plaintiff-appellant.

Kiyo A. Matsumoto, Asst. U.S. Atty., E.D. New York, Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D. New York, Miles M. Tepper, Asst. U.S. Atty., E.D. New York, Brooklyn, N.Y., of counsel), for defendant-appellee.

Before MESKILL, CARDAMONE and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Plaintiff appeals from judgment of the United States District Court for the Eastern District of New York, Thomas C. Platt, Jr., *Judge*, filed July 18, 1983, granting the Secretary's motion for judgment on the pleadings and dismissing the complaint.

Reversed and remanded.

## I. BACKGROUND

Plaintiff Bluvband is a 52-year-old female who lives with her husband and two grown children in a two-bedroom apartment in Forest Hills, New York. Bluvband was born in Russia, where she graduated from college with a degree in library studies and worked as a librarian until 1970. In 1974, Bluvband emigrated to the United States. From January to September, 1975, she worked as an order picker and assembler in Jacksonville, Florida, for a plumbing company. Beginning in February, 1977, she worked as a quality control inspector. In May, 1978, she moved to New York, where

she began working as a housekeeper at Hillside Manor, a nursing home located in Jamaica, New York.

Starting in October, 1979, she was hospitalized for three months due to hypoglycemia. Because of her severe low blood sugar level, half of her pancreas was removed. Her gall bladder and spleen were also taken out. Unfortunately, these surgeries, in the words of her treating physician, Dr. Nash, were "followed by a variety of serious complications including infection of the peritoneum with localized abscesses which in turn led to perforation of the intestines." These complications required her doctors to perform a colostomy. According to her treating physician, Bluvband developed large hernias after the colostomy was closed in March, 1980.

The removal of half of her pancreas apparently did not correct the hypoglycemia. As the Administrative Law Judge (ALJ) noted in his decision, "[t]he surgeries were unable to correct a chronic low blood sugar reportedly due to residioblastosis [sic] and diffused proliferation of islet cells of the pancreas." To combat her low blood sugar level, she continued to take Diazoxide (Proglycem) and to eat every two or three hours. The medicine and the prescribed constant eating in turn caused her to gain a considerable amount of weight (she testified at the disability hearing that her weight had risen from 155 pounds to 179 pounds). The increased weight contributed to her hernias and further affected her mobility.

Bluvband was hospitalized again on March 5, 1981, for repair of one of her hernias. The attending physician, Dr. Hadda, stated that Bluvband had an "established diagnosis of nesidioblastoma, [and] blood sugar running usually between 50 and 80." He noted her "[b]lood sugar on admission 59- the other factors in SMA–12 were all within normal." He also stated that Bluvband's recovery from the hernia operation "was smooth with the exception of a marked allergic reaction to adhesive tape." According to Dr. Hadda, on March

14, 1981, Bluvband "was discharged home fully ambulatory."

On May 13, 1981, Bluvband applied for social security supplemental security income based on her inability to work since October, 1979, due to hypoglycemia and hernias. She stated in her application that she was taking antibiotics and that she had to eat six times each day to keep her blood sugar level up. She also asserted that she could not perform any recreational activities other than walking her dog and that Dr. Hadda had told her not to work. She stated that she could do light housework but could not carry bags from the supermarket or exert herself in any other way.

On June 30, 1981, Dr. Strassberg, a specialist in internal medicine, examined Bluvband on behalf of the Secretary. He noted her history of hypoglycemia and the related surgery. He confirmed that she continued to suffer from a hernia, noted that her weight continued to increase, and reported that she complained of pain. His report did not comment, however, on the conclusions of Dr. Nash and Dr. Hadda that Bluvband suffered from nesidioblastosis, an organic type of hypoglycemia.

In his evaluation of Bluvband's residual functional capacity, Dr. Strassberg concluded that Bluvband could sit six hours, stand four hours, and walk four hours in an eight-hour day. He also noted that she could lift and carry up to twenty pounds and could bend, squat, crawl and climb occasionally. He added that she could use her hands for repetitive grasping, pushing, pulling and fine manipulations. He also noted that she did not exhibit any mental disorders or sensory, environmental or other limitations.

The Secretary initially denied Bluvband's claim for benefits in July, 1981. On August 13, 1981, Bluvband filed a request for reconsideration. She reasserted that she had hypoglycemia, low blood sugar and a post-operative hernia and that she had to take medicine and eat six times a day. She added that she suffered from loss of memory and blackouts. In her reconsideration disability report, she stated the following:

The condition is basically the same if I keep to medication & diet. Otherwise, it gets out of control.

. . . .

I can't do any physical work due to hernia which is the 3rd one and also due to hypoglycemia. I get tired very fast. It is not like [a] normal person.

. . . .

Dr. Nash will not let me do any types of hard physical labor.

. . . .

My feet swell up often. I can't stand up for long.

The Secretary referred Bluvband to Dr. Wilchfort, an internal medicine specialist who examined Bluvband on September 16, 1981. Dr. Wilchfort noted that Bluvband had been complaining since her initial operation "of episodes of dizziness, passing out and tremulousness." He noted her history of hypoglycemia and the related surgery and that she was taking Proglycen. He stated that she complained of arthritis, particularly in the left shoulder and in the knees bilaterally and he confirmed that she suffered from a post-operative hernia in her right side. Though he was aware of her hypoglycemia history, he reached his conclusions without conducting a blood sugar test. In connection with her complaints of hypoglycemia, blackouts and dizziness, he specifically stated that "[f]or further evaluation she should have a blood sugar."

In his evaluation of Bluvband's residual functional capacity, Dr. Wilchfort stated that she could sit, stand and walk eight hours, occasionally lift and carry up to twenty pounds, occasionally bend, squat, crawl and climb, and use her hands for repetitive grasping, pushing, pulling and fine manipulations. Like Dr. Strassberg, Dr. Wilchfort stated that Bluvband had no mental disorders or sensory, environmental or other limitations.

In a report dated September 14, 1981, Bluvband's treating physician, Dr. Nash, traced Bluvband's history of operations, hypoglycemia, resultant obesity, and hernias. He indicated that she was "dependent"

on Diazoxide and that due to her medical condition "she is at present and for the next future totally disabled."

On October 1, 1981, the Secretary reaffirmed the denial of disability benefits. Bluvband then requested and received a hearing before an ALJ of the Social Security Administration's Office of Hearings and Appeals.

The record indicates that pending the hearing, Bluvband had to return to the hospital on October 18, 1981, for emergency treatment. It is difficult, however, to discern the type of treatment she may have required at that time because the emergency treatment report is largely illegible.

At the hearing, held on January 20, 1982, Bluvband appeared *pro se,* accompanied by her 25-year-old son and by an interpreter. She testified as to her recurring hospitalizations and surgeries relating to her hypoglycemia and hernia. She stated that her illness required her to visit Dr. Nash, whose office is next door to her apartment, every two weeks for blood tests and examinations. She again indicated that as a result of her hypoglycemia, she experienced dizziness, loss of memory and blackouts. Moreover, she cited her dizziness as a factor that made her fearful of travelling alone on public transportation. She also complained that the medicine and the constant eating, which she stated were essential to keep her low blood sugar from getting out of control, caused her to become obese.

She testified that she often suffered from swollen feet and hands. She stated that although the doctor had told her to take water pills to reduce the swelling, she disliked doing so because the pills contributed to her dizziness.

She also referred to other physical problems, including a burning sensation in her legs, particularly when she stands on her feet, and a back pain which prevents her from sitting for very long. She stated that her leg and back pains prevent her from climbing steps (her building has an elevator) or from lifting anything other than

very light objects. She also noted that her daily activity was restricted to watching television, doing light cleaning and other light work (her daughter does the heavier work), reading, and walking the dog one or two blocks. She stated that she had difficulty kneeling and dressing herself. She testified, for example, that she was unable to put on her socks because her hernia prevented her from bending down.

On April 21, 1982, the ALJ issued a decision finding that Bluvband was not eligible for supplementary security income. The ALJ concluded that

> [t]he medical evidence reveals no medically-determinable impairment which is expected to last for 12 months and which significantly restricts claimant's ability to engage in basic work-related activities. Claimant therefore can be found to have no severe impairment, and her claim for supplemental security income must be denied.

After the ALJ's decision, Bluvband requested a review before the Appeals Council of the Office of Hearings and Appeals. By letter of June 21, 1982, the Appeals Council notified Bluvband that her request for review was without basis and that the ALJ's decision would stand as the final decision of the Secretary.

Bluvband then commenced this action on July 13, 1982, seeking review of the Secretary's decision. The Secretary moved for judgment on the pleadings. Bluvband, represented by counsel for the first time in these proceedings, cross-moved for reversal of the Secretary's decision and, alternatively, for remand pursuant to 42 U.S.C. § 405(g) (Supp. V 1981) on the basis of new material evidence. In a judgment entered July 18, 1983, Judge Platt granted the Secretary's motion and dismissed the complaint.[1]

On appeal, Bluvband contends that (a) there was not substantial evidence in support of the Secretary's decision, (b) the ALJ used the wrong standard in evaluating the treating physician's report, (c) the ALJ did not fulfill his duty to Bluvband, a *pro se* claimant, of scrupulous and conscientious inquiry, and (d) the district judge erred in not finding that Bluvband had presented new material evidence which at a minimum warranted a remand to the Secretary.

The Secretary has determined that Bluvband's disability is not such as to limit her ability to perform basic work activities. We conclude that this decision is not supported by substantial evidence. We also hold that the ALJ failed to meet his special duties owed to Bluvband as a *pro se* claimant. Therefore, we reverse and remand to the district court.

## II. DISCUSSION

A claimant seeking social security disability benefits is considered disabled for purposes of the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A)(Supp. V 1981); 42 U.S.C. § 1382c(a)(3)(A) (1976). The Secretary will find a claimant disabled only if the claimant's

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for

---

**1.** Judge Platt dismissed the complaint "without prejudice to plaintiff's right to move to reopen before the defendant Secretary based on new evidence." According to both parties' briefs, subsequent to the district court's decision, the Secretary informed Bluvband that her motion to reopen had been denied on the ground that the new evidence failed to establish that claimant was disabled during the relevant 12-month period considered by the ALJ. The decision against reopening is not before this court.

him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (1976).

The Secretary utilizes a five step sequence set forth in 20 C.F.R. §§ 404.1520, 416.920 (1983), *see, e.g., Rivera v. Schweiker*, 717 F.2d 719, 722 (2d Cir.1983), to evaluate disability claims. This procedure is summarized in *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (per curiam), as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

The claimant carries the burden, encompassed by the first four steps, of proving disability.[2] *Rivera v. Schweiker*, 717 F.2d at 722. If the claimant establishes that her impairment is sufficiently severe to prevent her from doing her past work and to limit significantly her ability to perform basic work activities, the burden shifts to the Secretary to prove the fifth step—that there is other work that the claimant could perform. *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983); *Rivera v. Schweiker*, 717 F.2d at 722–23; *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980).

In assessing a claim of disability, the Secretary must consider objective and subjective factors, including the following: (1) objective medical facts; (2) diagnoses or medical opinions based on these facts; (3) subjective evidence of pain and disability testified to by claimant or other witnesses; and (4) the claimant's educational background, age, and work experience. *Rivera v. Schweiker*, 717 F.2d at 723; *Parker v. Harris*, 626 F.2d at 231; *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 41 n. 2 (2d Cir.1972).

A finding by the Secretary that a claimant has not shown disability is conclusive if supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Aponte v. Secretary of Health and Human Services*, 728 F.2d 588, at 591 (2d Cir.1984); *Donato v. Secretary of Health and Human Services*, 721 F.2d 414, 418 (2d Cir.1983); *Berry v. Schweiker*, 675 F.2d at 467. Thus, absent legal error by the Secretary, her decision cannot be set aside if it is supported by substantial evidence. *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983); *Aubeuf v. Schweiker*, 649 F.2d 107, 112 (2d Cir.1981); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *see also Donato*, 721 F.2d at 418; *Parker v. Harris*, 626 F.2d at 231–32.

---

2. Obviously, under this approach the claimant must meet the fourth step only if she is unable to establish that her impairment is listed in Appendix 1 of the regulations. Similarly, the Secretary will not have the opportunity in effect to rebut under the fifth step the claimant's prima facie case if the claimant establishes that her disability falls within Appendix 1 of the regulations. Herein, Bluvband does not argue that her impairments are so listed.

■ Upon review, this court must be satisfied that the claimant has had a "full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." *Gold,* 463 F.2d at 43; *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir.1980). This is particularly so where, as here, "the claimant is handicapped by lack of counsel, ill health, and inability to speak English well ...." *Gold,* 463 F.2d at 43. Under such circumstances, "the ALJ has a 'duty ... to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts ....'" *Hankerson v. Harris,* 636 F.2d at 895 (quoting *Gold,* 463 F.2d at 43), and the reviewing court has "a duty to make a 'searching investigation' of the record" to make certain that the claimant's rights have been protected adequately. *Gold,* 463 F.2d at 43.

■ As this court has noted on many occasions, the application of burden of proof is "'particularly elusive in cases involving social security benefits,' in part because the proceedings 'are not designed to be adversarial' and certainly are not likely to be such when the claimant, as here, is unrepresented." *Donato,* 721 F.2d at 418 (quoting *Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir.1982)). Thus, although the ALJ need not resolve every inconsistency and ambiguity in the record, *Ferraris v. Heckler,* 728 F.2d 582, at 587 (2d Cir.1984), he must nevertheless, especially where a *pro se* claimant is involved, affirmatively assist the parties in developing the record. *See Hankerson v. Harris,* 636 F.2d at 896 (ALJ erred in failing to inform *pro se* claimant that he should obtain a more detailed statement from his treating physician). The ALJ must do so with the recognition that "[t]he Social Security Act is a remedial statute which must be '"liberally applied"'; its intent is inclusion rather than exclusion." *Marcus v. Califano,* 615 F.2d at 29 (quoting *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir.1975) (citation

omitted)); *see also Rivera v. Schweiker,* 717 F.2d at 723; *Gold,* 463 F.2d at 41.

With the above principles in mind, we have reviewed closely the ALJ's decision and the administrative record. Because we find several infirmities in the approach and decision of the ALJ, we are unable to conclude that the Secretary's determination is supported by substantial evidence and that the ALJ met his special duties to Bluvband as a *pro se* claimant.

Initially, it is difficult to determine from the ALJ's cryptic and conclusory decision whether he even followed the sequence established by the Secretary's own regulations, 20 C.F.R. §§ 404.1520, 416.920, and described above. For example, even though he listed claimant's education in Russia and the various jobs she held in the United States through October, 1979, he failed to indicate what he considered her relevant past work. Since there was no such indication, and since such a determination would have been essential to a finding that Bluvband had or had not met her burden of proof under step four, we must presume that the ALJ found she had not met her burden under step two,[3] i.e., that she did not have a "severe impairment" that significantly limited her physical or mental ability to do basic work.

Of more significance, however, is the apparent disregard that the ALJ showed for Dr. Nash's professional opinion that "due to her hypoglycemia ... [Bluvband] is at present and for the next future totally disabled." It is well-established in this circuit that "[t]he expert opinions of a treating physician as to the existence of a disability are binding on the fact finder unless contradicted by substantial evidence to the contrary." *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978); *see also Donato,* 721 F.2d at 419 ("we have regarded a treating physician's diagnosis, to the extent it is uncontradicted, as binding"); *Rivera v. Schweiker,* 717 F.2d at 723 ("expert opinion of a treating physician on the subject of disability is binding on the Secretary unless

---

3. Because Bluvband has not been gainfully employed since October, 1979, the ALJ of course could not have found against her on the basis of the first step.

substantial evidence is presented to the contrary"); *Eiden v. Secretary of Health, Education and Welfare,* 616 F.2d 63, 64 (2d Cir.1980) ("we have repeatedly stated that when 'no contradictory evidence is presented, a treating physician's expert opinion is binding on the Secretary' ") (quoting *Alvarado v. Califano,* 605 F.2d 34, 35 (2d Cir.1979) (per curiam)). Moreover, it is equally well-established that there is no requirement that the physician's "medical testimony 'be supported by "objective" clinical or laboratory findings.' " *Eiden,* 616 F.2d at 65 (quoting *Cutler v. Weinberger,* 516 F.2d at 1287).

■ The ALJ's decision suggests that he did not proceed in accordance with these principles. The cited cases establish a sequence, and in effect posit an analytical framework, which the ALJ should follow. Initially, the ALJ should see whether the treating physician has determined that the claimant is disabled. He should then examine the record for conflicting evidence. Upon finding conflicting evidence, he should compare the probative value of the treating physician's opinion with the probative value of the conflicting evidence. He should do so with the recognition that the treating physician's determination is generally "entitled to more weight than that of a doctor who has only seen the claimant once ...." *Rosa v. Weinberger,* 381 F.Supp. 377, 380 (E.D.N.Y.1974). In contrast to the above sequence, the ALJ herein assumed, *ab initio,* that "the weight to be given to [Dr. Nash's] statement ... depends upon the extent to which it is supported by specific and complete clinical findings ...." App. 7. It was improper for the ALJ to disregard the above framework by requiring from the start that Dr. Nash's expert opinion be accompanied by concrete and detailed clinical support. Obviously, this does not mean that specific and concrete clinical findings supporting a treating physician's position would not be useful to the Secretary in evaluating such an opinion of disability in light of conflicting evidence.

■ Even if the ALJ had not initially required affirmative proof supporting Dr. Nash's opinion, we cannot conclude that Dr. Nash's finding of total disability was contradicted by substantial evidence. Neither of the doctors who examined Bluvband at the Secretary's behest quarreled with Dr. Nash's diagnosis that Bluvband suffered from hernias and severe hypoglycemia. It would seem unlikely, in any event, that the consulting doctors would disagree with the diagnosis of hypoglycemia without first conducting appropriate blood tests. *See Spicer v. Califano,* 461 F.Supp. 40, 47 (N.D.N.Y.1978) (consulting doctor's report not substantial evidence because, *inter alia,* "the report appears to be inconclusive, as the doctor indicated that, in his opinion, additional tests should be conducted"); [4] *cf. Alvarado v. Califano,* 605 F.2d at 35 ("[t]he Secretary could have adduced further medical evidence that might have contradicted the opinion of [claimant's] physician ... but made no effort to do so"). Moreover, neither of the reports submitted by the Secretary's doctors mentions nesidioblastosis, the type of organic hypoglycemia of which Doctors Nash and Hadda, the treating physicians, indicated Bluvband suffered.

The only aspects of the consulting doctors' reports that contradicted Dr. Nash's opinion were the evaluations of Bluvband's residual functional capacity. Yet, these evaluations were completed after the Secretary's consulting physicians had examined Bluvband on only one occasion. In contrast, Dr. Nash had developed his opinion after treating Bluvband on a regular basis, often every two weeks, for five years. *See Rosa v. Weinberger,* 381 F.Supp. at 380. Moreover, it is the function of the ALJ to determine questions of fact where there is conflicting evidence. Herein, Bluvband testified that she could not bend down to put on her stockings due to her hernias and

---

4. Dr. Wilchfort's report specifically stated that "[f]or further evaluation she should have a blood sugar [test]."

excessive weight. Of course, the ALJ did not have to accept Bluvband's testimony. Yet, "he would normally be expected to note his rejection of it in whole or part." *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 643 (2d Cir. 1983); *Ferraris,* 728 F.2d 582, at 587 ("[w]e ... do not suggest that every conflict in a record be reconciled by the ALJ or the Secretary, ... but we do believe that the crucial factors in any determination must be set forth with sufficient specificity") (citation omitted). Without indicating whether he found Bluvband's testimony credible or incredible,[5] the ALJ accepted the consulting physicians' conclusion that she occasionally could bend, squat, crawl and climb. Similarly, Bluvband testified that she could not sit for longer than one hour at a time because her back would hurt. The ALJ, however, without stating that he rejected Bluvband's statements, accepted the evaluation of Dr. Wilchfort that she could sit for eight hours in an eight hour day, and of Dr. Strassberg that she could sit for six hours in an eight hour day. Furthermore, even though Bluvband testified that she could only lift very light objects weighing up to half a pound, and even though the ALJ again failed to indicate whether he found this testimony incredible, the ALJ relied upon the consulting physicians' evaluations that she occasionally could lift up to twenty pounds. The same can be said about Bluvband's ability to walk. She testified that she could walk one or two blocks, several times a day.

Without even commenting on the credibility of her testimony, the ALJ baldly accepted the evaluations of Dr. Strassberg and of Dr. Wilchfort regarding these critically important issues that are in dispute.

This analysis is not meant to suggest that the ALJ could not at all credit the residual functional evaluations of the consulting physicians as against Bluvband's testimony. We only conclude that such evaluations—which are critically disputed in a way that the ALJ failed to explore, and which were formulated after the physicians had examined the claimant only once—do not, under the facts presented here, constitute substantial evidence contradicting the treating physician's opinion of total disability.

■ The other evidence on which the ALJ purportedly relied is equally weak and equally fails to amount to substantial evidence in contradiction of Dr. Nash's diagnosis of disability. For example, the ALJ concluded in his decision that Bluvband's "blood sugar is generally controlled with medication and frequent feedings." A review of the transcript of the hearing suggests, however, that such a conclusion might have been based, tenuously, on the apparently confused response Bluvband gave to a question posed by the ALJ.[6] Furthermore, the ALJ thought it significant that "claimant has had no documented crisis such as blackouts or need for emergency treatment." Yet, this latter conclusion is contradicted by the record, which

---

**5.** The ALJ did state that "her level of exertion is limited by the discomfort of a hernia [, but t]his should be fully correctible with further surgery and as such cannot be considered a permanent impairment ...." The latter part of the statement is based on Dr. Nash's statement that "[a] surgical consultation is contemplated with the plan to surgically repair this ventral hernia." The ALJ's conclusion, however, ignores Bluvband's testimony that her discomfort derived in large part from the excessive weight she had put on due to her hypoglycemia.

**6.** The relevant colloquy reads as follows:

Q And does the doctor say it's fairly much under control?
A Yeah, I must go every two weeks.
Q Which—Dr. Nash?

A Dr. Nash.

The above statement, especially considering Bluvband's limited command of English, hardly supports the ALJ's conclusion that "her blood sugar is generally controlled with medications and frequent feedings." On appeal, the Secretary argues that the ALJ based his findings on isolated statements, not cited in the ALJ's decision, from the Parkway Hospital records (which were prepared in connection with Bluvband's hernia operation) stating that Bluvband "[u]sed to have low blood sugar," and that prescribed medication "has maintained her blood sugar." The ALJ did not comment on these reports. We do note, however, that they were prepared in connection with treatment related to her hernias, not to her hypoglycemia.

indicates that Bluvband received some sort of emergency treatment at Parkway Hospital on October 18, 1981.

In summary, even assuming that the ALJ had given appropriate weight to the treating physician's diagnosis and opinion, we cannot conclude that the evidence relied upon by the ALJ constituted substantial evidence contradicting that opinion. Since Dr. Nash's opinion is not "contradicted by substantial evidence to the contrary," *Bastien v. Califano*, 572 F.2d at 912, his "expert opinion ... on the subject of disability is binding on the Secretary...." *Rivera v. Schweiker*, 717 F.2d at 723.

Even if we held that the treating physician's opinion on disability was contradicted by substantial evidence, we still would reverse and remand on the ground that the ALJ failed to meet his special duties owed to Bluvband as a *pro se* claimant. As indicated *supra*, the ALJ reached the conclusion that Bluvband did not have a documented history of emergency treatment, even though the undisputed record evidence indicates that on October 18, 1981, Bluvband received some type of emergency treatment at Parkway Hospital. This evidence in the emergency report was largely illegible, yet the ALJ was not free simply to disregard it. It was his duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," *Gold*, 463 F.2d at 43, to determine the nature of the emergency and the treatment Bluvband received on that date. The ALJ failed in other ways to meet his obligation to ferret out the facts concerning Bluvband's condition. Although he apparently rejected Dr. Nash's opinion on the ground that it was conclusory and not supported by "specific and complete clinical findings," he failed to "advise plaintiff that [s]he should obtain a more detailed statement from h[er] treating physician." *Hankerson v. Harris*, 636 F.2d at 896; *see also Echevarria v. Secretary of Health and Human Services*, 685 F.2d 751, 756 (2d

Cir.1982) ("[m]oreover, as in *Hankerson*, the proper course would have been to direct Echevarria to obtain a more detailed statement from the treating physician").

## III. CONCLUSION

The Secretary has determined that Bluvband's disability is not such as to limit her ability to perform basic work activities. We reverse this determination since we conclude that the treating physician's opinion on disability is not contradicted by substantial evidence. We also hold that the ALJ failed to meet his special duties to Bluvband as a *pro se* claimant.[7] Thus, we reverse and remand to the district court with directions that the matter be remanded to the administrative agency for further proceedings consistent herewith.

---

7. Given our disposition of this appeal, we do not reach Bluvband's remaining contention that the district court erred in not remanding to the Secretary Bluvband's claim pursuant to 42 U.S.C. § 405(g) for consideration of allegedly new material evidence.