Joseph GUARDINO, Plaintiff,

v.

Otis R. BOWEN, Secretary of the Department of Health and Human Services, Defendant.

No. 86 Civ. 1987 (PNL).

United States District Court, S.D. New York.

June 10, 1987.

Edward T. McCormack, Garrison, N.Y., for plaintiff.

Rudolph W. Guiliani, U.S. Atty., S.D. N.Y., New York City, Neal S. Mann, Asst. U.S. Atty., of counsel, for defendant.

LEVAL, District Judge.

Plaintiff Joseph Guardino seeks review pursuant to 42 U.S.C. § 405(g) of the Secretary's determination denying him social security benefits. Both parties move for judgment on the pleadings. Fed.R.Civ.P. 12(c). I find that the Secretary erred in not according proper weight to the opinions of the treating physicians and therefore remand for further proceedings.

*Background*

Joseph Guardino is a 51–year-old unmarried man living with his mother in Putnam Valley, New York. A high school graduate with limited architectural drafting ability, (Tr. 23) plaintiff worked for 33 years as an unskilled construction laborer. On September ber 26, 1983, he fell while digging on uneven terrain and injured his back. Although unable to return to his job, plaintiff was denied social security disability benefits initially and upon reconsideration. (Tr. 59–61, 69–71.)

At a hearing before an administrative law judge (ALJ) on May 9, 1985, plaintiff described debilitating back pain extending into his feet. (Tr. 29.) He has great difficulty sleeping and cannot maintain even a seated position for long. Carrying groceries is painful, though he is able to care for his personal needs. He watches television a lot, reads, and raises homing pigeons. Because medication did not stop the pain, plaintiff no longer takes it. (Tr. 35–41.)

*Medical Evidence*

On October 12, 1983, Dr. Daniel Solomon conducted an X-ray examination of plaintiff's thoracic spine. Dr. Solomon found that plaintiff had a wedge deformity of the D 11 vertebral body along with a diminution in its height. (Tr. 100.) After a skeletal scan on November 11, 1983, Dr. L. Alpert opined that plaintiff's condition was most likely caused by degenerative disease. (Tr. 102.)

On December 27, 1983, plaintiff was examined for the American Mutual Insurance Companies by Dr. Ernest Bettmann. Plaintiff complained of back pain that did not radiate into the extremities. (Tr. 103.) He exhibited normal ambulation and no sensory or motor deficits. There was some muscle spasm in his back, however, with local mobility restricted 10 degrees actively and 5 degrees passively. Dr. Bettman diagnosed plaintiff as having a wedge deformity of the D 11 vertebral body, and possibly a spinal tumor as well. The doctor concluded that plaintiff would be unable to perform "heavy work, heavy lifting and long periods of walking." (Tr. 104.)

Dr. R.O. Nelson, a consulting chiropractor, examined plaintiff on June 18, 1984. Plaintiff complained of pain in his feet, hips, and middle and lower back, along with dizziness after any form of exercise. (Tr. 106.) Although Dr. Nelson found paraspinal muscle tenderness, x-rays of plaintiff's lumbar spine were normal, as were

his motion and gait. In fact, "there [were] very few objective findings to substantiate the patient's claim." Dr. Nelson diagnosed plaintiff as suffering mild back inflammation and recommended that plaintiff return to work in six weeks. The doctor also indicated his availability as a witness at any disability hearing. (Tr. 105–07.)

On September 17, 1984, Dr. Solomon conducted a second x-ray examination, which revealed once again a compression deformity of the D 11 vertebral body. (Tr. 135.)

Dr. Howard Levin examined plaintiff for the New York State Department of Social Services on October 18, 1984. He reported that plaintiff "easily" climbed onto the examining table, walked on toes and heels without difficulty, and exhibited no reflex or sensory abnormalities. The doctor concluded that plaintiff suffered "mild" lumbosacral discogenic disease unrelated to the D 11 compression fracture revealed by x-rays. (Tr. 108.)

On October 26, 1984, Dr. L. Langman, a nonexamining review physician for the Office of Disability Determinations (ODD), assessed plaintiff as being physically capable of sitting for 6 hours, walking or standing for 6 hours, and frequently lifting, carrying, pushing, or pulling up to 25 pounds. (Tr. 55.)

Dr. D.C. Sharma examined plaintiff on January 26, 1985 for the ODD and found no motor, reflex, or sensory abnormalities. Dr. Sharma diagnosed plaintiff as having local spine pain secondary to trauma with no neurological disability. (Tr. 55.)

On February 5, 1985, Dr. C.A. Montofano, a nonexamining physician for the ODD, assessed plaintiff as being physically capable of sitting for 6 hours, walking or standing for 6 hours, and frequently lifting or carrying up to 25 pounds. (Tr. 65.)

Dr. Carl Tompkins, plaintiff's treating chiropractor until March 1985, reported on February 22, 1985 that plaintiff suffered dizziness, restricted motion, and severe pain in the middle and lower back, hips, and feet. Any lifting, bending, or walking worsened these symptoms, which Dr. Tompkins attributed to a partial dislocation of the thoralumbar spine and D 11 compression fracture. (Tr. 131–34.)

On May 6, 1985, Dr. Tompkins further reported pain radiating into both legs and ankles, decreasing sensation in the left leg, and extreme tenderness in both sciatic notches. He noted that walking, sitting, bending, and lifting were painful and that plaintiff could not perform postural activities. The doctor stated that his treatment of plaintiff 3 times a week since the accident had resulted in only limited improvement. He concluded that plaintiff was totally disabled. (Tr. 124–29.)

Dr. Memoli, who became plaintiff's treating physician in March 1985, echoed Dr. Tompkin's assessment of total disability. He reported on March 27, 1985 that plaintiff had a midline herniated disk and suffered markedly restricted spinal motion, pain radiation into the extremities, and decreasing sensation in his left leg. (Tr. 122.) A CAT scan of plaintiff's lumbosacral spine on April 30, 1985 revealed a rather localized congenital abnormality. (Tr. 123.)

After the hearing before the ALJ, Dr. Memoli submitted a second medical report, indicating he had last examined the plaintiff on August 23, 1985. Dr. Memoli found tenderness along plaintiff's dorsal and lumbar spine and the surrounding muscles. Spinal mobility was severely restricted in all directions and there was diminished sensation and reflexes in the lower extremities. Dr. Memoli observed that plaintiff experienced pain if he lifted more than 10 pounds, sat for more than 15 minutes, or stood for any significant period of time. Dr. Memoli diagnosed plaintiff as suffering from a compression fracture of the D 11 vertebral body, herniated disk, and degenerative arthritis of the lumbosacral spine. He concluded that plaintiff's condition was progressive in nature and that plaintiff was incapable of performing even light work. (Tr. 139–40.)

*The Secretary's Decision*

In denying plaintiff's disability claim on May 30, 1985, the ALJ followed the sequential analysis required by 20 C.F.R. § 404.-1520(b)–(f). He found that plaintiff had engaged in no substantial gainful activity

since the accident. Next, he determined that plaintiff suffered no impairment which met or equaled the severity of any impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (Tr. 11.) The ALJ then found that plaintiff could not return to his previous work but retained the residual capacity to do light work. He concluded that plaintiff was not disabled by reference to the vocational tables in § 200.00 of Appendix 2. (Tr. 13.)

The ALJ stated that he based his assessment on a "careful consideration of the entire record," which included the testimony and medical reports described above except for Dr. Memoli's second report. The ALJ discounted Dr. Memoli's earlier diagnosis of a herniated disk as "not substantiated by clinical or diagnostic findings" and Dr. Tompkins' physical assessment as "not consistent" with his narrative reports. The ALJ then synthesized the evidence as follows:

> Although some restriction on heavy lifting appears warranted because of the claimant's discogenic disease and underlying congenital abnormality of the lumbosacral spine, no other restrictions are clearly established. The claimant's activities and non-use of medication certainly do not indicate that he has any significant degree of pain and this conclusion is borne out by the fact that no one who has observed the claimant in connection with this claim, including the Administrative Law Judge, has noted any abnormality of gait, station or any guarding motions to protect his back. The claimant's ability to walk and stand appears unimpaired. The Administrative Law Judge believes that the claimant would be unable to meet the demands of medium and heavy work, both of which require lifting fifty pounds or more, but that he retains the capacity for the full range of light work (section 404.1567).

(Tr. 13.)

Plaintiff petitioned the Appeals Council for review of the ALJ's decision, submitting the subsequent report of Dr. Memoli. The Appeals Council decision on January 15, 1986 noted its obligation under 20 C.F.R. § 404.970 to review the entire record and grant review where new and material evidence is submitted and the Council finds the ALJ's findings or conclusion contrary to the weight of the evidence in the supplemented record. The Council concluded:

> Dr. Memoli has opined that you are unable to perform any type of work activity, however, his opinion is not substantiated by clinical or diagnostic findings. The Council has decided that this additional evidence does not provide a basis for changing the Administrative Law Judge's decision.
>
> Due consideration has been given to all evidence from your treating physician as required by the *Bluvband* decision.

(Tr. 4.)

*Discussion*

■ The function of this reviewing court is to determine whether the Secretary has applied the correct legal standards and whether his decision is supported by substantial evidence. 42 U.S.C. § 405(g), 1383(c)(3); *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987); *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983). Substantial evidence " 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). On the other hand, the treating physician's report is binding on the Secretary unless contradicted by substantial evidence to the contrary. *Johnson,* 817 F.2d at 985; *Bluvband v. Heckler,* 730 F.2d 886, 892 (2d Cir.1984). The court must therefore make a "searching investigation of the record" to ensure that claimant has had a "full hearing under the Secretary's regulations and in accordance with the beneficient purposes of the Act." *Id.* (citations omitted). If there is "a reasonable basis for doubt whether the ALJ applied correct legal priniciples," the case should be remanded for reconsideration unless the record supports only one conclusion. *Johnson,* 817 F.2d at 986.

The parties agree that plaintiff suffers a severe impairment which renders him unable to perform his past work. Plaintiff takes issue with two determinations, however. With respect to the first—whether his disability meets or equals a listed impairment—he bears the burden of proof. If it does not, the Secretary must still establish that he is capable of performing other work. *Id.* at 891.

Plaintiff's contention that his disability equals the neurological disorders listed at §§ 11.16 and 11.17 of Part 404, Subpart P, Appendix 1 is without merit. There is no basis in the record for concluding that plaintiff suffers chronic brain syndrome or disorganization of motor function as described in § 11.04B or § 11.15B. Plaintiff's claim to an automatic disability determination under 20 C.F.R. § 404.1520(d) must therefore rest on equaling the spinal disorder listing in § 1.05C. That listing specifies an impairment consisting of (1) "[p]ain, muscle spasm, and significant limitation of motion in the spine"; (2) "[a]ppropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss"; and (3) a "vertebrogenic disorder" causing these symptoms. The ALJ did not specify which of three prongs he found unproven by plaintiff. From his conclusion that plaintiff can perform light work, however, it appears that he found all three disproved.

The two reports of plaintiff's chiropractor indicate that he met at least the first two criteria. On February 22, 1985, Dr. Tompkins described restricted motion, sharp pain in both feet, and severe lumbosacral pain worsened by any lifting, bending, or walking. (Tr. 131–34.) On May 5, 1985, Dr. Tompkins reported pain radiating from both legs down to the ankles, with decreasing sensation in the left leg. (Tr. 124–27.) The ALJ discounted the doctor's physical assessment (Tr. 128–29) as "not consistent" with these findings and yet did not specify any inconsistency. In fact, the May medical assessment reached the same conclusion as the May narration; namely, that plaintiff is totally disabled. (Tr. 127, 129.) It also noted, like the February report, that lifting, bending, or walking increased plaintiff's pain. (Tr. 128, 131.) The medical assessment's additional findings of environmental restrictions, impaired physical functions, and inability to perform certain postural activities (Tr. 129) are therefore entitled to the extra weight normally accorded the treating physician's opinion.

Conceivably, the partially dislocated vertebrae and D 11 fracture reported by Dr. Tompkins constitute a vertebrogenic spinal disorder as contemplated by § 1.05C. Whether the ALJ concluded otherwise or simply discounted the finding is unclear. Nor does the ALJ explain how this condition does not in either case equal the listing if accompanied by the specified pain and loss of motion, sensation, and reflexes.

Strong evidence that plaintiff meets or equals the listing also comes from the reports of Dr. Memoli. Dr. Memoli found in March 1985 that plaintiff had a midline herniated disk, with pain radiation into the extremities, decreasing sensation in the left leg, and a markedly restricted range of spinal motion. (Tr. 122–23.) After nearly 6 months of treatment, Dr. Memoli diagnosed plaintiff as having degenerative arthritis, along with the herniated disk and compression fracture. He observed tenderness surrounding the spine and diminished reflexes and sensation in the lower extremities. (Tr. 137–40.)

The ALJ discounted Dr. Memoli's finding of a herniated disk as "not substantiated by clinical or diagnostic findings." The Appeals Council discounted the doctor's subsequent report for the same reason. Yet Dr. Memoli's reports fully satisfy the regulatory standard for proper medical evidence.[1] His March 27, 1985 report, for

---

1. 20 C.F.R. § 404.1513 provides that medical reports should include:

    (1) Medical history;

    (2) Clinical findings (such as the results of physical and mental status examinations);

    (3) Laboratory findings (such as blood pressure, x-rays);

    (4) Diagnosis (statement of disease or injury based on its signs and symptoms);

instance related a brief medical history, the physical examination findings described above, the fact that he referred plaintiff for a CAT scan (which Dr. Temer performed on April 17, 1985), his prescribed treatment and medication, and his conclusion that plaintiff would remain totally disabled in spite of treatment. (Tr. 122.) The Secretary's discounting of these reports was therefore a misapplication of his own regulation.

■ In addition, there is no initial requirement that objective clinical and laboratory findings support the treating physician's medical testimony. *Bluvband*, 730 F.2d at 893. Arguably, Dr. Memoli's earlier report is not entitled to the deference usually accorded the expert opinion of a treating physician, since it was based on a single examination. In that case, however, the September report constituted new and material evidence submitted after a period of treatment and progression of plaintiff's condition. The Appeals Council therefore erred in discounting that report and adopting the ALJ's decision without a searching review of the supplemented record. 20 C.F.R. § 404.970; *cf.* 42 U.S.C. 405(g).

■ The Secretary also argues that the 1984 amendment to 42 U.S.C. § 423(d)(5), Pub.L. No. 98–460 has overridden the *Bluvband* rule with respect to findings of pain. That section now provides that

[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical *or* laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph ... would lead to a conclusion that the individual is under a disability....

(5) Treatment proscribed with response and prognosis; and

(Emphasis added). It is clear, however, that Drs. Tompkins and Memoli have documented the abnormalities underlying plaintiff's pain in line with the statutory standard. Based on x-rays, several physical examinations and a course of treatment, Dr. Tompkins diagnosed plaintiff as having partially dislocated vertebrae and a D 11 compression fracture as well as possible herniation of the lumbar disk. (Tr. 124–29, 131–34.) Dr. Memoli's diagnosis, based on x-rays, a CAT scan, and his own examination of plaintiff, was degenerative arthritis, along with a herniated disk and compression fracture. (Tr. 122–23, 137–40.) The treating physicians' reports of plaintiff's pain are therefore entitled to the same extra deference owing to their other findings.

In contrast to the treating physicians, the nonexamining physicians found plaintiff capable of doing light work. (Tr. 55, 65.) In addition, the consulting physicians found that plaintiff's back mobility was only slightly restricted, with no evidence of sensory or motor deficits. (Tr. 103–04, 106–08.) Dr. Nelson noted very few objective findings to substantiate plaintiff's claims, while Dr. Levin did not believe plaintiff's symptoms were attributable to the compression fracture. (Tr. 107–08.) It is questionable whether these findings substantially contradict the treating physicians, however, for Drs. Memoli and Alpert both diagnosed plaintiff's condition as degenerative. Similarly, Dr. Tompkins' reports show a progressive worsening of symptoms from October 1983 to April 1985. (Tr. 125, 131.) Whereas Drs. Thompkins and Memoli report on plaintiff's condition through April and August 1985, respectively, the consultive examinations occurred between December 1983 and January 1985 (Tr. 55, 104–08.)

■ In any case, there is no specific indication that the ALJ relied on the reports of nontreating physicians in finding that plaintiff suffered no significant pain or restricted motion. Instead, the ALJ discounted the treating physicians' reports and pointed to his own observations of plaintiff, as well as plaintiff's activities and

(6) Medical assessment.

nonuse of medication. Plaintiff's care of his personal needs and homing pigeons, however, hardly requires the exertion of "light work," including standing for long periods and lifting over 10 pounds. *See* 20 C.F.R. § 404.1597. Moreover, the ALJ did not even mention plaintiff's own complaints, including difficulty sleeping, or his explanation that medication did not sufficiently alleviate his pain to be worthwhile. Without more specific comment on the credibility of these assertions, the ALJ's contrary impressions from one encounter with the plaintiff cannot, any more than the diagnoses of consulting physicians, constitute the substantial evidence necessary to disregard the expert opinions of treating physicians. *Cf. Bluvband,* 730 F.2d at 894 (ALJ cannot baldly accept findings of consulting physicians who have *examined* plaintiff once as substantial evidence contradicting treating physician's opinion of total disability without commenting specifically on the credibility of claimant's crucial contrary testimony).

### Conclusion

I find that the Secretary erred in not according proper weight to the reports of plaintiff's treating physicians. The claim is therefore remanded to the Secretary for further proceedings consistent with this opinion.

SO ORDERED.