**Alan WALLACE, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendants.**

**86 Civ. 8007 (KTD).**

United States District Court, S.D. New York.

Nov. 25, 1987.

Edward B. Willing, Mount Vernon, N.Y., for plaintiff.

Rudolph W. Giuliani, U.S. Atty. for the Southern District of New York, New York City, Mark S. Sochaczewsky, of counsel, for defendants.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

The claimant, Alan Wallace, appeals from a decision of the Secretary of Health and Human Services (the "Secretary" of "HHS") denying him disability insurance benefits. Wallace now moves for summary judgment pursuant to Fed.R.Civ.P. 56(a) and requests attorney's fees. In the alternative, Wallace moves for a remand to the Secretary. The Secretary moves for judgment on the pleadings pursuant to Fed.R. Civ.P. 12(c). For the following reasons, the motions for judgment are denied and the case is remanded.

On November 18, 1985, Wallace filed an application for disability insurance benefits. Transcript of the Administrative Record

("Tr.") 42–45. Wallace's application was denied initially, tr. 50, and upon reconsideration. Tr. 60. An administrative hearing was thereafter held in which Wallace appeared *pro se.* The Administrative Law Judge ("ALJ") at the hearing found Wallace not entitled to disability insurance benefits. Tr. 19. This decision was adopted as the decision of the Secretary on September 22, 1986, upon a determination by the Appeals Council of the Social Security Administration ("Appeals Council") that there was no basis for review. Tr. 6. The Appeals Council reconsidered its original denial of review in an opinion letter dated February 11, 1987, in response to a letter from Wallace, dated one week before the original denial of review, which enclosed a medical report from Wallace's treating physician that had not been available to the ALJ. Tr. 4. Upon reconsideration, the Appeals Council found no basis for vacating the ALJ's decision. This decision became the final decision of the Secretary. Tr. 5.

*Background and Medical History*

Wallace is now 52 years old. He was born in Scotland and immigrated to the United States in 1949. Tr. 24–25. He completed his education through the ninth grade, tr. 25, and worked as a light maintenance man for the same employer from 1963 to October, 1985. Tr. 73, 133. He is apparently literate but the transcript reflects that he had a great deal of difficulty speaking and answering questions at the hearing. Wallace met the disability insured status requirements of the Act on October 15, 1985, the date he stated that he became unable to work. Tr. 19.

In 1963, Wallace had difficulty with acute urinary retention, a continuous feeling of having a full bladder even after urination, and a recurring problem with bladder stones. As a result, surgery was performed to insert a suprapubic catheter. Tr. 86. This catheter is a tube inserted through the abdominal wall and into the bladder by means of a permanent opening surgically created just above the pubic hairline and below the navel. The tube is connected from the bladder to a bag, strapped around the left thigh, which serves as a receptacle for urine. At night, the tube is connected to a larger bedside receptacle. Tr. 40. Wallace has no control over the release of urine; it is released continuously. Tr. 33. The catheter must be changed by a physician every four to six weeks. Tr. 31, 90.

Wallace visited the hospital many times in the first 20 years after the 1963 surgery because of recurring problems with bladder stones. Tr. 40, 86. It was not until April, 1984, however, that open surgery was again necessary. Between April, 1984, and October of 1985, Wallace underwent three separate surgical operations for the removal of bladder stones. The hospital records of these operations were provided to the ALJ as exhibits at the hearing. Tr. 86, 88, 91. Wallace was released from the hospital after the third surgery "without restrictions." Tr. 91.

Wallace testified before the ALJ that his work as a light maintenance man required him to sweep, clean, take out garbage, shovel snow, cut grass, rake leaves, clean out rain gutters and lift heavy objects. Tr. 26–27. Wallace had missed work during the past few years for a few days each month due to frequent urinary tract infections and once every eight to nine months when the bladder stones had to be "taken care of." Tr. 40. He left this job in 1985 allegedly because the suprapubic catheter tube had become too painful, uncomfortable and messy for him to bend over as required for adequate performance of his job tasks, tr. 27–30, 33, and the consequential need to often go home early from work. Tr. 27, 29, 40. The primary reason provided by Wallace for difficulty in the performance of his job tasks was that bending was painful and caused the collection of "gravel" in the tube which, in turn, caused leakage from the catheter tube. Tr. 29–30, 35. After the October surgery, the third in less than two years, Wallace felt he could no longer do his job because it was "too much strain." Tr. 30.

In addition to Wallace's testimony, two medical reports by Dr. Diagonale, Wallace's treating physician in 1985, were available for consideration by the ALJ.

One report was made at the request of, and on forms provided by, the Social Security Administration, Department of HHS, the other, on a form from the New York State Department of Social Services ("NYSDSS"). The NYSDSS form report, dated January 23, 1986, responds to two separate queries with the conclusion that Wallace is "sufficiently disabled" that he is unable to work. Tr. 116, 117. The HHS form report, dated March 19, 1986, is incomplete and contains no such concise statements regarding Wallace's work capabilities. The only responses were in the general background sections and the section titled "Medical Assessment of Ability to Do Work Related Activities." In that section boxes had been checked off to indicate that standing and/or walking and sitting were affected by the impairment but lifting and carrying were not. It was estimated that Wallace could stand or walk for 2–3 hours without the need to empty his urine bag. The follow-up request for "medical findings to support this assessment" was left unanswered. In addition, Dr. Diagonale failed to answer the rest of the report which required evaluation of how often postural activities such as climbing, stooping, and crouching, or physical functions such as reaching, bending, pushing, or pulling could be performed and whether there were any environmental restrictions on exposure to extreme heights or temperatures. Tr. 120–25.

The ALJ stated that he considered the above reports in reaching his conclusion that Wallace was not disabled. Tr. 17. The "consideration" involved noting Dr. Diagonale's conclusion that it is "impossible for the claimant to work" yet nonetheless performing an independent analysis of the Dr.'s second, incomplete report and arriving at the opposite conclusion. Tr. 18.

A third medical report was submitted by Dr. Diagonale. It was not available to the ALJ at the hearing, but was considered by the Appeals Council when it reconsidered the ALJ's findings. Because this report was reviewed by the Appeals Council it is appropriately included in the record for this appeal. This third report was dated June 16, 1986. Tr. 10. The report was sent to the Appeals Council from the New York State Department of Labor ("DOL") along with the latter's conclusion that Wallace was unable to work. Tr. 10, 135.

In the last report Dr. Diagonale "specified that physical activities such as lifting, carrying, pushing, pulling, climbing, stooping and bending should be avoided. ... the claimant should also avoid travelling ... [and] extremes of temperature, dust, fumes, noise and high places." Tr. 4. The Appeals Council found this "in marked contradiction" to Dr. Diagonale's report dated March 19, 1986, and chose to disregard it. Tr. 4.

Further medical evidence was submitted for review. However, it consisted of reports from nonexamining physicians, tr. 115, 118, and was apparently not relied on by the ALJ. Tr. 16–19; *see also* Defendant's Memorandum of Law Submitted in Support of Defendant's Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Summary Judgment, at 21.

In addition to the medical evidence, Wallace testified before the ALJ that he lives with his 75 year old mother who takes primary responsibility for household chores. Tr. 36–37, 72. He feels better now that he is not working but still has problems once in a while. Tr. 31. Wallace's daily activities now that he is not working are primarily watching television and reading. Occasionally he goes for walks, does light dusting to help clean the apartment, tr. 36, and when his health permits, goes out to visit his nieces and nephew, tr. 37, 72, or to his Veteran's Club. Tr. 38. When he travels he uses public buses. Tr. 34.

*Discussion*

Wallace, in order to qualify for disability benefits, must show his

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A) (1982 & Supp. III 1985). Further, Wallace has the burden of proving that he is disabled within the meaning of the act. 42 U.S.C. § 423(d)(5) (1982 & Supp. III 1985); *Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 642 (2d Cir.1983). An ALJ's determination that this burden has not been met is conclusive if supported by substantial evidence, provided that the Secretary has applied the proper legal standards. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978); *Gold v. Secretary of HEW*, 463 F.2d 38, 42 (2d Cir.1972).

Substantial evidence means "more that a mere scintilla" and is defined as "such relevant evidence as a reasonable man might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). Thus, it is not the function of the reviewing court to make a *de novo* determination. Rather, the scope of judicial review is limited to an assessment of the sufficiency of evidence in support of the ALJ's decision. *Parker*, supra, 626 F.2d at 231.

In the instant case the ALJ found that although Wallace's ongoing difficulties with a neurogenic bladder, bladder stones, urinary infections and a suprapubic catheter had worsened and had required three open surgeries in less than two years, "he retained the residual functional capacity to do his past relevant work." Tr. 17. The ALJ's determination is based on an erroneous application of the "treating physician's rule." According to this rule,

a treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condi-

tion than are other physicians, although resolution of genuine conflicts between the opinion of the treating physician, with its extra weight, and any substantial evidence to the contrary remains the responsibility of the fact-finder.

*Steiberger v. Bowen*, 801 F.2d 29, 31 (2d Cir.1986) (quoting *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir.1986)); *see also Arzuaga v. Bowen*, 833 F.2d 424 (2d Cir.1987).

Initially, it should be noted that "an additional element of the rule is that 'there is no requirement that the [treating] physician's medical [opinion] be supported by objective clinical or laboratory findings.'" *Steiberg*, supra, 801 F.2d at 31, (citations omitted); see also *Bluvband v. Heckler*, 730 F.2d 886, 893 (2d Cir.1984).

Because even a conclusory report by a treating physician presumably rests upon encapsulated experience with the subject, the ALJ may not reject or discount his or her summary report without first informing the claimant of this proposed action and providing the claimant an opportunity to submit a more detailed statement.

*Ceballos v. Bowen*, 649 F.Supp. 693, 700 (S.D.N.Y.1986).

There were three medical reports completed by Wallace's treating physician, Dr. Diagonale, and available for consideration by the Secretary in this case.[1] Two reports clearly stated that Dr. Diagonale considered Wallace unable to work, while one was incomplete and contained no dispositive statements regarding Wallace's ability to work. One of the reports with the doctor's conclusion of disability and the third, incomplete, report were before the ALJ at the hearing.

The ALJ discounted the expert medical opinion of disability when he found that Wallace's physical limitations cited by Dr. Diagonale in the incomplete report were inconsistent with the conclusion of disability. As such, the doctor's opinion was found to be insufficient proof that Wallace was unable to work. This "inconsistency"

---

1. There were also reports by consulting physicians. However the opinions of the nontreating physicians were not relied on by the ALJ and "cannot in themselves constitute substantial evidence overriding the opinions of examining physicians." *Havas v. Bowen*, 804 F.2d 783, 786 (2d Cir.1986). Therefore, those reports will not be discussed here.

was considered by the ALJ as proof that Wallace was capable of returning to work. Yet, the two reports are not necessarily inconsistent. It is equally reasonable to conclude that the expert's opinion that Wallace could not work was based on information not included in the HHS form reports. Under this interpretation, the ALJ did not give sufficient weight to Dr. Diagonale's opinion as is mandated by the treating physician rule.

This interpretation was reinforced by the third report from Dr. Diagonale, available to the Appeals Council, listing more specifically the limitations imposed on Wallace by his medical condition and concluding that Wallace was unable to work. Nonetheless the Appeals Council found no basis for vacating the ALJ's decision.[2]

The ALJ and the Appeals Council noted that Wallace's own testimony also contradicted his claim of disability. The contradiction was found in the fact that Wallace was "unable to state why he could not bend" and "unable to respond satisfactorily" to questions regarding "why he was able to work for twenty years, but not since October 1985." Tr. 18. In addition, the ALJ felt that Wallace's release from the hospital in October of 1985 "without restrictions" indicated that he was capable of returning to work. In sum, the ALJ found that the testimony provided "no evidence" to show that Wallace could no longer perform his job.

An incomplete record is not substantial evidence creating a "genuine conflict" with Dr. Diagonale's opinion that Wallace is unable to work. *Steiberger,* supra, 801 F.2d at 31. In fact, the ALJ is responsible for the record. "[E]specially where a *pro se* claimant is involved, [the ALJ must] affirmatively assist the parties in developing the record." *Bluvband v. Heckler,* 730 F.2d 886, 893 (1984) (citing *Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir.1980)). This duty is particularly important when "the claimant is handicapped by lack of counsel, ill health, and inability to speak English well." *Bluvband,* 730 F.2d 892.

The ALJ failed to fulfill this duty in both his questioning style, interrupting Wallace's answers, and his failure to inform Wallace that he should obtain a more detailed statement from his treating physician. To then rely on the incompleteness of the medical reports available is not consistent with the ALJ's duty to develop the record and the non-adversarial nature of a disability hearing. Because Wallace's treating physician found that he was unable to work and his finding was not contradicted by substantial evidence, the finding was binding on the ALJ under the treating physician rule.

I cannot accept the Secretary's finding of no disability in the face of statements by Dr. Diagonale that, in his expert opinion as the treating physician, Wallace was unable to continue to work. If the ALJ felt that the treating physician's reports were questionable then it was the ALJ's responsibility to sufficiently develop the record and adequately safeguard Wallace's procedural needs as a *pro se* claimant. Because this was not done, this case must be remanded for a further hearing on Wallace's claim. On remand, Wallace should be given an opportunity to produce updated, detailed medical reports and submit any additional relevant evidence he desires.

Accordingly, plaintiff's motion is granted insofar as it seeks remand and defendant's motion for judgment on the pleadings is denied. As there is no prevailing party at this point, Wallace's request for attorney's fees against the Secretary pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985), is premature, and is therefore denied. The case is remanded to the Secretary for proceedings consistent with this decision. The instant action is hereby dismissed, subject to being

---

**2.** It appears that the State of New York Department of Labor found Wallace disabled after evaluating this report by Dr. Diagonale. "As we have previously held, '[w]hile the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered.'" *Havas v. Bowen,* 804 F.2d 783, 786 n. 1 (2d Cir. 1986) (quoting *Cutler v. Weinberger,* 516 F.2d 1282, 1286 (2d Cir.1975)) (citations omitted).

reopened by either party within a reasonable time following further proceedings by the Secretary.

SO ORDERED.